## JOSEPH C. KELSO vs. MARY ANN TABOR.

A promissory note, given by a married woman as surety for her husband, and for his liability on a bond given by him as deputy sheriff, to his principal, and for defalcations on account of moneys collected by such deputy, is not binding upon her at law, notwithstanding it is expressed in the note, " and she hereby charges her separate estate with the payment of this note." Nor is there any liability in equity arising upon such a consideration.

It is only in relation to the control and management of such property as a married woman may acquire under the provisions of the statutes of 1848 and 1849 that her incapacity to make contracts has been removed by those acts. In all other respects, her incapacity by reason of the marriage relation remains unchanged as it was at common law, before those statutes were enacted.

The powers conferred upon married women, by those statutes, were in derogation of the common law, and are, therefore, to be strictly construed.

Those statutes are not to be made, by construction, to extend to any object or purpose beyond that expressed, to wit, that of managing the estates so to be received by the persons intended to be benefited.

The note of a married woman, which would be otherwise void as a contract, is not validated and made binding by the insertion, in it, of a direction or charge that the indebtedness therein created may be charged upon her separate estate.

THIS action is brought upon a promissory note in the following form : " One year after date the undersigned promises to pay Joseph C. Kelso or order five hundred dollars with interest, value received, and she hereby charges her separate estate with the payment of this note." Signed by the defendant. The action was referred, and the referee found, among others, the following facts : That during the year 1863, Henry H. Hathorn was the sheriff of the county of Saratoga, and on or about September 28, 1863, appointed one Nathan Tabor one of his deputies, upon receiving from him the bond in evidence, which was duly executed by said Nathan Tabor as principal, and by the plaintiff and defendant, together with Daniel Flynn and George Tomins as sureties. That subsequently executions were placed in the hands of said Nathan Tabor, as such deputy, upon and by virtue of which he collected and received divers sums of money and converted and appro-

priated the same to his own use, and neglected to pay the same over upon proper demands therefor by the respective parties entitled thereto. That by reason of the appropriation and conversion by said Nathan Tabor, and of his neglect to pay over the moneys so collected and received by him as aforesaid, which amounted to the sum of $541, the said amount of $541 was demanded by the sheriff or by the parties entitled thereto, of the plaintiff and defendant and of the said Daniel Flynn and George Tomins, as such sureties as aforesaid, and thereupon a proposition relative thereto ensued between the plaintiff, Flynn, Tomins and the said Nathan Tabor, wherein it was proposed by said Nathan Tabor, that the plaintiff, Flynn and Tomins, should pay the said $541 in consideration that the defendant should execute a note to the plaintiff for the sum of $500, payable in one year, and that the plaintiff, upon receiving payment thereof, was to pay to Flynn and Tomins their shares of the avails. That in pursuance of such arrangement the note in suit was executed, and said plaintiff, Flynn and Tomins paid the said $541. That at the time of the execution of said bond and of said note by the defendant, she was and ever since has continued to be a married woman, the wife of said Nathan Tabor. That the said defendant, at the times aforesaid, possessed separate property and had a separate business, in the transaction of which her husband, the said Nathan Tabor, sometimes assisted her. That the note in suit was not procured from the defendant by or through any representation made by the plaintiff to her. That the defendant, at the time of the execution of said note read the same, and knew the contents thereof. That the only consideration for the note in suit was the alleged indebtedness of the said Nathan Tabor, by reason of his defalcations as aforesaid. At the time of the giving the note in suit, no property or money passed between the parties thereto, and no part of the consideration thereof went for

the benefit of the separate estate of the defendant. Neither at the time of the giving of said note or prior thereto, did the plaintiff surrender, deliver up, or release to the defendant or to any other person for her, any note, judgment, claim or demand held by him against any person, except two notes signed by the defendant, which were delivered to said Nathan Tabor, and which were intended to be in conformity with and to carry out the arrangement made by and between said Nathan Tabor, plaintiff, Flynn and Tomins, as aforesaid, but which were severally rejected and refused to be accepted by said plaintiff, on account of their form not being satisfactory. That the note in suit was not given for an indebtedness due from the defendant to the plaintiff, nor for expenditures or advances made by the plaintiff to or for the defendant, or for the benefit of her estate. No money or property passed from the plaintiff to the defendant at the time of the execution of the said note, nor has any been paid or advanced by the plaintiff on account of the defendant."

As conclusions of law, the referee found that the bond to the sheriff was void as to the defendant, and no legal liability attached to the defendant thereby. That there was no good or valid consideration for the said note, and directed judgment for the defendant. From this judgment the plaintiff appealed to this court.

*W. A. Beach,* for the appellant.

*J. S. L'Amoreaux,* for the respondent.

*By the Court,* POTTER, J. No question is raised about the consideration of the note in question. It is conceded that it was given by a married woman, as surety for her husband, and for his liability on a bond given by him as deputy sheriff, to his principal, and for defalcation on account of moneys collected by such deputy; and that the defendant signed the bond with others as surety for her husband.

The amount of the note in question is just about the amount of such claimed defalcation. In some respects this case differs from the case of *Yale* v. *Dederer,* reported in 18 *N.* *Y. Rep.* 265, and again reported in 22 *id.* 450. In the reported case, the consideration of the note was also the debt of the husband of the defendant, and the wife, in that case, signed as surety for him, and with the intent to charge her separate estate with the payment thereof, but such intent was not expressed in the note itself. The defendant was held not liable, and one leading reason expressed in the opinion, though not the only one, was, that she had not created any such liability by the instrument executed. In the case before us it is expressed on the face of the note, as follows : " And she hereby charges her separate estate with the payment of this note." There is no other substantial difference between the cases. If she is liable in this case, it is upon the sole ground of her statement on the face of the note, that she charges her separate estate with the payment thereof. Every other point is adjudged in the case of *Yale* v. *Dederer.* In my opinion, the question arising in this case, is also decided in that. I need not cite authority to the proposition, that the contract of a married woman is absolutely void at law. By the marriage, at common law, the husband and wife become one person, and the very being or legal existence of the woman is suspended during the marriage; or, in other words, is merged or consolidated into that of the husband, under whose protection she performs all acts; so that a compact made between themselves while in the marriage state is an impossibility; they are but one person; and a person cannot contract with himself or herself. " This legal incapacity," (says Comstock, J. in *Yale* v. *Dederer,* 18 *N. Y. Rep.* 272,) " is a far higher protection to married women than the wisest scheme of legislation can be; and we should hardly expect to see it removed, in a statute intended for the more effectual protection of her

Kelso *v.* Tabor.

rights." It is thus seen that this incapacity of a married woman in law, to make contracts, was approvingly recognized as being in full force, by the highest court of the state, as recently as the year 1858.

The defendant in this action, it is shown, possessed a separate estate. When, or how she acquired it, the case fails to inform us. If she acquired it since the statutes of 1848 and 1849, it is a legal estate, in relation to which, she has power to act as a *feme sole.* But it is only in relation to the control and management of such property as she may acquire under the provisions of those acts, that her incapacity to make contracts has been removed by the statutes of 1848 and 1849. In all other respects, her incapacity by means of the marriage relation, remains unchanged as it was at common law, before those statutes were enacted. The powers conferred upon married women by those statutes were in derogation of the common law, and those powers are therefore to be strictly construed. (*Graham* v. *Van Wyck*, 14 *Barb.* 531. 4 *Sandf.* 241, 242. *Coke's Ins.* 97 *b.*) These statutes in their creation of new powers and authority are limited and confined to those powers which are expressed; or in other words, they are not to be made by construction, to extend to any object or purpose beyond that expressed, to wit, that of managing the estates so to be received by the persons intended to be benefited. The maxim " *Expressio unius est exclusio alterius,*" applies to their construction in this respect. These statutes, therefore, have taken from the defendant no disability of her coverture, because the consideration of the contract in question has no relation to her separate estate; nor is the note in question of itself, any " conveyance or devise of her estate; or of any interest therein."

If the defendant's separate estate was acquired before the enactment of said statutes, so much the worse for the plaintiffs' claim, in law. The incapacity, in that case,

beyond all question, remains as it did at common law, and the burthen of showing that she held it with power to make contracts affecting it, in such case, was cast on the plaintiff, and this he has failed to establish. So that whether the defendant's separate estate was acquired before or after the enactment of the statutes referred to, no power has been shown that gives a *feme covert* power to make such a contract. The incapacity imposed by the common law, is pronounced to be for her protection, and to be wise. The limitation of her powers, by the statutes of 1848 and 1849, in my opinion, is not less wise. I should greatly regret to see the legislature interfere with that protection. This case itself demonstrates practically, the wisdom of the law in that regard. Of what use or practical benefit would be a separate estate to a married woman, possessing a true woman's sympathies, having a gambling, idle, intemperate, or spendthrift husband, if his creditors, could first involve the husband in embarrassment or ruin, and then appeal to the wife, with the argument that her signature would save him from disgrace, dishonor, or punishment? Husbands, I doubt not, could be found, unfeeling enough to connive with creditors to effect such an object. It is wise, therefore, to leave a good law in all its force; her incapacity in such case, is her only security. I am not disposed to destroy the power, or to weaken the force of its advantages by construction.

It is still insisted by the plaintiff's counsel that a married woman may give away her estate to her husband or to any one else. This may be very true if she had it in hand at the time. That, however, is not this case; and we need not speculate or establish a rule upon the possible cases, in the future. INGRAHAM, J. in a dissenting opinion in the case of *Barnett* v. *Lichtenstein*, (39 *Barb.* 201,) says, "that a wife may bind her separate property so as to be security, but it must be as to real estate, and in a form that will reach real estate." "But, (he adds,) the general declara-

Kelso *v.* Tabor.

tion contained in this note, is not, in my judgment sufficient to impose on all her estate real and personal, a liability, which at law is void and cannot be enforced, and which, therefore, presents to equity no good reason why a court of equity should interpose its power to enforce a contract which is void at law." This was a dissenting opinion at the general term of New York; and with great respect to the opinions of two judges who held the converse of these views, I cannot adopt the decision of that case as law; but concur in the views expressed in the dissenting opinion, as being in harmony with the authority of the case of *Yale* v. *Dederer.* What a *feme covert* might do with money in hand, or what she might even do by an executed instrument under seal, in a form to bind real estate, we need not discuss now. The proposition to be decided here, is, simply, is the executory legal contract of a married woman in the form of the note in question, the consideration of which is, the being security for her husband, and as to which her separate estate receives no benefit, and is in no wise interested, valid in law? We have already said, that in law, such an instrument is void. Is there then any liability in equity, arising upon such a consideration? No case has been cited to sustain such a proposition. Any number of cases can be cited to the converse thereof. An early case in the court of errors, (*Ludlow* v. *Simond*,) reported in 2 *Caine's Cases in Error*, 1, 28, laid down the rule, that there is no equitable liability upon a *surety* where he cannot be held at law. This principle has been sustained with a uniformity of concurrence in the cases of *Cobine* v. *St. John*, (12 *How. Pr*, 333;) *Goodall* v. *McAdam*, (14 *How.* 385;) *Dickerman* v. *Abrahams*, (21 *Barb.* 551;) *Coon* v. *Brook*, (*Id.* 546;) *and the case of Yale* v. *Dederer*, (*supra.*) This contract, if it is any thing, is a legal contract only. The defendant was a *surety* only. She had not received, did not receive, and was without the chance of receiving any benefit or interest from the

contract for himself, or for the benefit of her separate estate. It is a mere naked, legal, void contract. How then, does any equity arise? There is no pretence of fraud, accident, or trust in the case. The case seems to call for the decision of this question only; is the note of a married woman, which would be otherwise void as a contract, validated and made binding, by the insertion in it, of a direction or charge, that the indebtedness therein promised, may be charged upon her separate estate? To me, it seems, that there can only follow this one logical, and necessary answer; if the promise to pay is void, there is no debt to charge upon the estate.

In any view of the case, I find no reason for reversing the judgment. I think the referee was right, and the judgment should be affirmed.

[CLINTON GENERAL TERM, May 7, 1867. *James, Rosekrans* and *Potter,* Justices.]