THE CORN EXCHANGE INSURANCE COMPANY *vs.* EDWARD BAB-
COCK and ARMINA his wife, and STEPHEN. E. BABCOCK.

An action at law, seeking an ordinary pecuniary judgment, as upon a personal
contract, is not maintainable against a married woman who, without consid-
eration and without benefit to her separate estate, and simply as the surety
of her husband and for his accommodation, indorses his note.

In order to create a valid charge upon the separate estate of a married woman,
there must be a specific description of the property, in the instrument cre-
ating it, executed according to legal formalities, and enforced in equity, under
a complaint seeking as relief, not a general judgment, but the satisfaction of
the charge out of the specific property subjected thereto.

Such a charge cannot be created by a married woman's accommodation indorse-
ment of a promissory note, in these words: "For value received I hereby
charge my individual property with the payment of this note;" where the
attempted charge is not founded upon any benefit to her separate estate, or
upon any matter in which she has an interest, or on account of which she
has received any consideration.

Section 3 of the act of 1862, chapter 172, empowering a married woman, pos-
sessed of real estate as her separate property, to bargain, sell and convey
the same, and to enter into any contract in reference thereto, refers to such
modes and forms of bargain and sale and conveyance of real estate, and con-
tracts relative thereto, as were recognized as legal, and were in conformity
with the law existing at the time, and does not sanction a charge or contract
of the kind above mentioned.

Section 7 of that act, authorizing a married woman to sue or be sued in all
matters having relation to her sole and separate property, in the same man-
ner as if she were sole, refers mainly to her right and liability to sue and be
sued without having her husband joined with her, and was not intended to
subvert the rules of law or legal proceeding then existing in regard to the
essential characteristics of such actions, or the kind of relief to be sought, or
the mode in which it is to be reached.

APPEAL by the defendant Armina Babcock, from a
judgment entered upon the report of a referee.

The action was brought upon three promissory notes,
made by Stephen E. and Edward Babcock, and indorsed
by the defendant Armina Babcock, in the following form:

"For value received, I hereby charge my individual
property with the payment of this note.

ARMINA BABCOCK."

At the time the notes were made and indorsed, which
was in 1863 and 1864, Armina Babcock was a married

woman (being the wife of the defendant Edward Babcock) and the owner of a separate estate, consisting of real property. The other defendants, Stephen E. and Edward Babcock, were insolvent. The referee found that Mrs. Babcock made the indorsements for the benefit of the other defendants, and that she had no interest in the transaction; but there was no finding that she intended to charge her separate estate. The action was in the ordinary form of action against makers and indorsers, except that the above indorsement was literally copied, and the complaint alleged that Armina Babcock was in the possession of separate estate, and that she intended to charge such estate.

On the trial the appellant raised several objections to the plaintiff's recovery, and moved to dismiss the complaint, because it asked for a personal judgment against a married woman; on the grounds that she was improperly joined with the other defendants; that she was not liable in such an action, but only, if at all, in equity; and that no intent to charge her separate estate was proved, &c.

The judgment was in the usual form, for the recovery by the plaintiff of the amount of the notes, and the costs of the action.

*J. A. Millard*, for the appellant.

*R. A. Parmenter*, for the respondent.

*By the Court*, HOGEBOOM, J. In this case the learned referee gave a personal money judgment against the appellant, a married woman, in an action at law, for a debt of her husband not benefiting her separate estate, upon a note of which she was simply indorser, or guarantor, for him, and in the proceedings in which action her separate estate was not specifically described, and to which separate estate the judgment made no allusion. The com-

plaint was in the ordinary form, against the makers and indorsers of a note, except that it described in *hæc verba*, the appellant's indorsement, and by amendment embraced the further allegation that the appellant was the wife of Edward Babcock, "and, at the time of making her said indorsement, had, and still has, separate estate, and intended to charge her separate estate, by her said indorsements." The only proof of such intent produced at the trial was the character of her indorsements, which were as follows:

"For value received I hereby charge my individual property with the payment of this note.

ARMINA BABCOCK."

And the fact that, at the time, she had, and still owns, as her separate estate, a house and lot in the city of Troy, worth several thousand dollars, and that her co-defendants were insolvent. The referee does not find any such intent, nor that the indorsement was for the benefit of her separate estate; but, on the contrary, finds that "such notes were indorsed by the said Armina for the benefit of the said Stephen E. and Edward Babcock, she having no interest in the transaction."

Under these circumstances, I do not think this judgment can be sustained, for reasons which I proceed to give.

1. The common law disability of the wife to bind herself in any such way as is claimed to have been done by these indorsements is conceded. A question is raised whether the writing of the appellant upon the back of the notes amounts to an indorsement; but for the purposes of this case, I assume that it does. One of them clearly is so, because it directs the payment to be made to the secretary of the plaintiff. The disabilities attaching to coverture are not to be regarded as any further removed than they are by the married women's acts of 1848, 1849, 1860 and 1862; and the question is, whether these acts justify the

judgment given in this case. While they are, perhaps, to be construed liberally to promote the objects intended, it must not be forgotten that their leading object was to benefit and protect married women, and not to expose their separate estates to new and increased dangers and liabilities.

2. Prior to the acts of 1860 and 1862, it was not supposed, so far as I know, (even under the acts of 1848 and 1849,) that married women could be made liable under an instrument like that now under discussion; certainly they could not be charged personally. In the leading case of *Yale* v. *Dederer*, (18 *N. Y. Rep.* 265,) repeatedly before the courts, it was held that the capacity of married women to bind themselves by their contracts is not enlarged by the acts of 1848 and 1849, and that a married woman having a separate estate does not bind it by signing a promissory note as surety for her husband. This case came again, and finally, before the Court of Appeals, (22 *N. Y. Rep.* 450,) where the court reached this conclusion: that in order to create a charge upon the separate estate of a married woman, the intention to do so must be declared in the very contract which is the foundation of the charge, or the consideration must be one going to the direct benefit of the estate. The court did not decide in what manner (otherwise than that it must be in the contract itself) this intention must be made to appear; whether by a specific mortgage, pledge or appointment of property specifically described, which was enforced in equity, in a direct proceeding to sell such separate estate, as had long been the practice of courts of equity (the common law courts not assuming jurisdiction of such a proceeding;) or whether a general declaration of an intent to charge, or of an actual charge upon, her separate estate, without in any way describing it, was sufficient. This decision was made in 1860, but without any reference to

the act of that year, and of course without any to the sub-
sequent act of 1862.

The act of 1860 (*ch.* 90, § 3, *as amended in* 1862, *ch.* 172,
*p.* 344) empowered married women to bargain, sell and
convey such real estate as they possessed as their separate
property, *and to enter into any contract in reference to the
same,* with the like effect in all respects as if they were
unmarried. I observe in the statute no like provision in
regard to personal property; but assuming that the power
of a married woman was equally operative over her per-
sonal estate, one question would be, whether a *general*
judgment affecting all her property, as well as that of her
husband, in which she had an interest by reason of the
conjugal relation, as her own separate property, would be
proper. I think this is not answered by saying that the ex-
ecution of the judgment can be controlled so far as to limit
its enforcement to her separate property. The judgment
itself should be such as not apparently to cover or affect
any property other than that on which it is a lawful lien.

The broader and more important question, however, is
whether the authority given to enter into any contract in
reference to her real estate is practically carried out, in
accordance with the intention of the law-makers, by an
indorsement of a note saying she charges her individual
property with the payment of the note. If she attempted
to make a deed or conveyance of her property in such a
way, it would be plainly illegal; and I think neither of
the acts of bargain, sale or conveyance, which in a previous
part of the same sentence she is empowered to make,
would be well executed by a simple statement in writing,
saying: "For value received I hereby bargain (or sell or
convey) my individual property to A. B." It appears to
me it would be rejected for indefiniteness, as well as for
non-compliance with the forms of law. And I am strongly
inclined to think the loose and indefinite language con-
tained in this instrument is a decisive objection to its

validity. "For value received" may possibly answer, however untrue it in fact is. "*I hereby* (that is, upon the back of a promissory note) *charge* (that is, mortgage, pledge or make liable,) *my individal property* (without describing it, without acknowledging the instrument, without recording it, without letting anybody know what property it covers, or whether it covers any,) *with the payment of this note.*" If she indorsed a hundred notes, to different persons, in the same way, which is to have the preference, according to the date when they were given, or according to the date when judgment is obtained? No *man*, I think, could legally mortgage or pledge his property in that way, and I doubt whether any *woman* can.

3. But it is said we are controlled by authority, on this subject, which we are bound to respect. In *Barnett* v. *Lichtenstein*, (39 *Barb.* 194,) the majority of the court went far enough to sustain the liability of the wife in the present case, putting it upon the ground that the words and intent of the statute were complied with by a charge made in this way and in this general form. But Justice INGRA-HAM, dissented, holding that, according to well settled rules of courts of equity, when a wife wishes to charge her real estate as security for her husband's indebtedness, she must do so by a mortgage or other proper charge of specific property, which is to be enforced as such. That she cannot contract a personal liability for her husband, and for his benefit, upon her note, without any consideration to herself; and that the effect of sustaining the doctrine of her liability, in the case under consideration, would be to place her in a worse condition than if sole, and to deprive her of the safeguards which the law has thrown around her to protect her property from the debts of her husband. Although this is a general term decision, it was made by a divided court, and cannot claim absolute authority in a condition of the law so new and unsettled, and so much the subject of conflicting decisions.

It is directly opposed by a still later general term decision in the fourth district, made also by a divided court, (ROSEKRANS, J. dissenting,) in the case of *Kelso* v. *Tabor*, (52 *Barb.* 125,) where the attempt was made to recover upon the wife's note given for her husband's debt, and charging her estate in the same form as in the present case. Justice POTTER, delivering the opinion of the court, held that though not in terms, yet in principle, the case was decided by the case of *Yale* v. *Dederer*, (18 *N. Y. Rep.* 265, *and* 22 *id.* 450.) That the contract of a married woman is absolutely void at law; that the statutes of 1848 and 1849 have taken from the wife no disability of her coverture, because the consideration of the contract in question has no relation to her separate estate, and the note is no conveyance of any interest therein; that the question is not what she might do with money in hand, or by an executed instrument, under seal, in a form to bind real estate, but by an executory contract, not given for her benefit, in which she has no interest, which is void at law, and for the enforcement of which there is no adequate inducement for equity to step aside from the well established rules prevailing in that court; that the question is, whether the writing, which would be void at law as a contract, is made valid and binding by a direction that the indebtedness be charged upon her separate estate; that the action is also one at law, seeking a money judgment, and not equitable relief; and cannot succeed in that form, nor be turned into an equitable action, without violating the principles of pleading. (*Heywood* v. *City of Buffalo*, 14 *N. Y. Rep.* 540.)

I feel inclined to adopt the reasoning of the last mentioned case, rather than that of *Barnett* v. *Lichtenstein*, as more in accordance with the spirit of equity and the intent of the legislature; and to grant a new trial, in this case, substantially for the following reasons:

1st. That an action at law, seeking an ordinary pecuni-

ary judgment, as upon a personal contract consummated by a judgment of that character, in the ordinary form, is not maintainable against a married woman who, without consideration, and without benefit to her separate estate, and simply as the surety of her husband, and for his accommodation, indorses his note.

2d. That the plaintiff, having received these notes upon a preëxisting indebtedness, is not entitled to protection as a *bona fide* purchaser for a valuable consideration.

3d. That as the attempted charge upon the wife's separate real property, in this case, was not founded upon any benefit to such estate, or upon any matter in which she had an interest, or on account of which she had received any consideration, there is no occasion or justification for any departure from the established principles and proceedings of a court of equity, which require, in order to make and enforce a valid charge, a specific description of the property, in the instrument creating the charge, executed according to legal formalities, and enforced in equity, under a complaint seeking as relief, not a general judgment, but the satisfaction of the charge out of the specific property subjected thereto.

4th. That section 3 of the act of 1862, chapter 172, empowering a married woman possessed of real estate as her separate property, to bargain, sell and convey the same, and to enter into any contract in reference thereto, with the like effect in all respects as if she were unmarried, refers to such modes and forms of bargain, sale and conveyance of real estate and contracts relative thereto, as were recognized as legal, and were in conformity with the law as expounded in judicial tribunals at the time, and does not sanction a contract or charge of the kind now under investigation.

5th. That section 7 of the act of 1862, chapter 172, authorizing a married woman to sue or be sued in all matters having relation to her sole and separate property, in

the same manner as if she were sole, refers mainly to her right and liability to sue and be sued without having her husband joined with her, and does not intend to confound or overthrow the rules of law or legal proceeding which theretofore obtained in regard to the essential characteristics of such actions, or the kind of relief to be sought, or the mode in which it is to be reached.

6th. That the weight of authority is against the maintenance of the action in its present form.

I am therefore of opinion that the judgment should be reversed, and a new trial granted, with costs to abide the event.

New trial granted.(<em>a</em>)

[ALBANY GENERAL TERM, September 16, 1867. *Miller, Ingalls* and *Hogeboom,* Justices.]

(*a*) In *Loweree* v. *Babcook,* decided at the same term with the above case, the facts were the same; except that in that case the plaintiff was a *bona fide* holder for value, and there was no amendment of the complaint charging the ownership by Mrs. Babcock of a separate estate, and the intent to charge the same by her indorsement; but proof of such ownership of real estate was introduced, without objection. The court *held* that there was nothing in these facts which should vary the conclusion from that which was arrived at in the above case; and a similar judgment was rendered.