Filed Nov. 9, 1883.

---

No. 9649.

## HAAS ET AL. *v.* SHAW ET UX.

MARRIED WOMAN.— *Common Law.—Act of March 25th, 1879.—Rule of Construction.—Contract of Partnership.*—Under the common law, a married woman is incapable of binding herself by an executory contract, and all such contracts, whether in writing or by parol, are absolutely void at law. This was the law of this State until the act of March 25th, 1879, concerning married women, took effect and became the law ; and while the provisions of this act were to be liberally construed, yet, as they were in derogation of the common law, they were not to be enlarged by construction beyond the plain meaning of the language used in the act. There is no sentence, clause, or section, in the act of March 25th, 1879, which authorized a married woman to bind herself by a contract of copartnership with her husband or any other person, or to carry on any

Haas *et al. v.* Shaw *et ux.*

trade or business, or to perform any labor or service on the joint co-partnership account of herself and her husband, or any other person.

PLEADING.—*Reply.*—*Departure.*—*Demurrer.*—Where the reply is a departure in pleading, it is bad on demurrer for the want of sufficient facts.

EXEMPTION FROM EXECUTION.— *When Claimed.*—*Property Attached.*— *Answer.*—Property exempt from execution is not subject to seizure under an order of attachment; but where such property has been attached, and the defendant has the right to claim the same as exempt, he must do so by his answer before final judgment in the attachment proceeding, or his claim will come too late.

SAME.—*Reply.*—*Demurrer.*—Where, in such case, the defendant answers, showing his right to claim, and claiming, the attached property as exempt from execution and seizure under the attachment, a reply to such answer to the effect that the defendant has other property, describing it, besides the property attached, is bad on demurrer for the want of sufficient facts.

From the Shelby Circuit Court.

*O. J. Glessner, T. B. Adams, L. J. Hackney, — Campbell, — Bates* and *— VanMartels,* for appellants.

*A. Major, S. Major, H. S. Downey, C. Major,* and *T. S. Rollins,* for appellees.

HOWK, J.—In this case the appellants, the plaintiffs below, on the 20th day of October, 1880, filed their complaint against the appellees, in substance, as follows:

" The plaintiffs Benjamin Haas, Barnhard Weis and Adolph Haas, partners, trading under the name and style of Haas & Weis, complain of Daniel J. Shaw and Eliza L. Shaw, as partners, trading under the name and style of Shaw & Co., and say that the defendants, as such partners, are indebted to the plaintiffs in the sum of $828.41, for personal property sold and delivered by the plaintiffs to the defendants, as such partners, at their instance and request, the particulars of which are set forth in an account filed herewith, leaving due and unpaid said sum of $828.41, with interest due thereon from the 4th day of October, 1880. Wherefore," etc.

It may be fairly inferred, we think, from the itemized account filed with the complaint, that the goods were sold and

delivered, as alleged, during the year 1880, although the dates are not stated with much accuracy.

With their complaint the appellants also filed an affidavit wherein they stated, among other things, that the " defendants, and each of them, have sold, conveyed and otherwise disposed of their property, subject to execution, with the fraudulent intent to cheat, hinder and delay their creditors; and that the defendants, and each of them, are about to sell, convey and otherwise dispose of their property, subject to execution, with the fraudulent intent to cheat, hinder and delay their creditors."

The appellees severed in their defence. The appellee Eliza L. Shaw answered the complaint in a special paragraph, to which the appellants' demurrer, for the alleged insufficiency of the facts therein to constitute a cause of defence, was overruled by the court. They then replied specially, and to this reply the demurrer of Eliza L. Shaw, for the want of sufficient facts, was sustained by the court. The appellee Daniel J. Shaw answered the attachment proceedings in a special paragraph, to which the appellants' demurrer, for the alleged insufficiency of the facts therein, was overruled by the court. They then replied specially, and to this reply the demurrer of Daniel J. Shaw, for the want of facts, was sustained by the court. The appellants duly excepted to each of these rulings, and declined to reply further to either of the separate answers of the appellees. Thereupon the court rendered judgment that appellants take nothing by their suit against Eliza L. Shaw, that she recover of them her costs, and that as to her their attachment be discharged; that the appellants recover of Daniel J. Shaw the debt in suit and costs; and that the personal property, described in Daniel J. Shaw's answer, was exempt from sale, under the attachment proceedings.

The first error complained of by the appellants in this court is the overruling of their demurrer to the separate answer of Eliza L. Shaw to their complaint. In her answer she alleged, in substance, that before and at the time of the supposed sale

and delivery of the personal property mentioned in appellants' complaint, she was, hitherto had been, and then was a married woman and the wife of her co-appellee Daniel J. Shaw during all that time.

It is manifest, from our statement of this case, that the question of the sufficiency or insufficiency of this answer depends, for its proper decision, upon the construction which must be given to the provisions of an act entitled "An act concerning married women," approved March 25th, 1879. This act took effect and became a law on the 31st day of May, 1879, and continued in force during all the time covered by the account in suit, and until the 19th day of September, 1881. Prior to the taking effect of the above entitled act of March 25th, 1879, married women in this State were protected by the disabilities imposed on them by the common law, and were incapable of binding themselves by an executory contract. Thus, in *O'Daily* v. *Morris*, 31 Ind. 111, this court said: " It is a rule of the common law, too familiar and well settled to need the citation of authorities, that a *femme covert* is incapable of binding herself by an executory contract, and that all such contracts made by a married woman, whether in writing or by parol, are absolutely void at law. There is nothing in the legislation of this State in relation to married women, changing this rule of the common law, at least so far as it applies to such contracts at large." So the law remained, and so it was continuously construed by this court, until the taking effect of the aforesaid act of March 25th, 1879. *Thomas* v. *Passage*, 54 Ind. 106; *American Ins. Co.* v. *Avery*, 60 Ind. 566; *Liberty Tp. Draining Ass'n* v. *Watkins*, 72 Ind. 459; *Pierce* v. *Osman*, 79 Ind. 259; *Eberwine* v. *State, ex rel.*, 79 Ind. 266; *Parks* v. *Barrowman*, 83 Ind. 561.

The first statutory innovation upon this common law rule is the above entitled act of March 25th, 1879; and while the provisions of the act must be liberally construed, according to their true intent and meaning, yet, as they are in derogation of the common law rule, they are not to be enlarged by

construction beyond the plain meaning of the language used by the law-making power in their enactment.    Pott. Dwarris, 257 ; *Schwarm* v. *Osborn,* 59 Ind. 245 ; *Logan* v. *Logan,* 77 Ind. 558. After the act took effect and became a law, a married woman in this State was emancipated from the disabilities imposed on her for her own protection by the common law, to the precise extent, and no further, contemplated and expressed by the General Assembly in the language of the statute.    In other words, the common law rule still prevailed, after the taking effect of the act, except as such rule was abrogated or modified by the plain intent of the statute.

With this prefatory statement, we will now set out so much of the above entitled act of March 25th, 1879, as seems to us to have any bearing upon the proper decision of the question presented by the alleged error of the trial court in overruling the appellants' demurrer to the separate answer of Eliza L. Shaw.    Omitting the enacting clause, section 1 provided that "A married woman may bargain, sell, assign and transfer her separate personal property the same as if she were sole."

" Sec. 2.    A married woman may carry on any trade or business, and perform any labor or service on her sole and separate account.    The earnings and profits of any married woman, accruing from her trade, business, services or labor, other than labor for her husband or family, shall be her sole and separate property."

" Sec. 3.    A married woman may enter into any contract in reference to her separate personal estate, trade, business, labor or service, and the management and improvement of her separate real property, the same as if she were sole, and her separate estate, real and personal, shall be liable therefor on execution or other judicial process."

" Sec. 8.    A husband shall not be liable for any debts contracted by the wife in carrying on any trade, labor or business on her sole and separate account, nor for improvements made by her authority on her separate real property."

"Sec. 10.    A married woman shall not mortgage or in any

manner encumber her separate property acquired by descent, devise or gift, as a security for the debt or liability of her husband or any other person." Acts of 1879, pp. 160 and 161.

The sections quoted contain, we think, all the provisions of the aforesaid act of March 25th, 1879, which are applicable to the question we are required to decide. We are of opinion that these statutory provisions did not wholly abrogate or supersede the common law rule in force in this State at the time of their enactment, under which, as we have seen, a married woman was incapable of binding herself by any executory contract, and all such contracts, howsoever made, were absolutely void. Under the statute, and by force of its provisions, above quoted, a married woman was authorized to carry on any trade or business, and to perform any labor or service " on her *sole* and *separate* account," and not otherwise ; and her earnings and profits from such trade, business, services and labor, other than labor for her husband or family, were to " be her *sole* and *separate* property." Of course, such married woman was rendered capable of binding herself by her executory contracts, in connection with her trade, business, labor, or service, " on her sole and separate account," but not on any other account. Except as to her contracts in relation to her trade, business, labor, or service, on her sole and separate account, the statute left such married woman precisely as she had been prior to its enactment, incapable of binding herself by an executory contract, and all such contracts, with such exception, were, as before, absolutely void. Certainly, there is no sentence, clause, or section, from the enacting clause to the final word or syllable of the above entitled act of March 25th, 1879, which can be said by any fair construction to authorize a married woman to bind herself by a contract of copartnership with her husband or any other person, or to carry on any trade or business, or to perform any labor or service on the joint or copartnership account of herself and her husband or any other person. We conclude, therefore, that the facts stated in the separate an-

swer of the appellee Eliza L. Shaw were sufficient to consti-
tute a cause of defence in her behalf to appellants' cause of
action, and that the court committed no error in overruling
their demurrer to such answer.

This conclusion is sustained, we think, by the reported de-
cisions of the courts of Massachusetts and New York, in
construing statutes of those States containing provisions
somewhat similar to those of the aforesaid act of March 25th,
1879.    Thus, in *Lord* v. *Parker*, 3 Allen, 127, the Supreme
Court of Massachusetts, in construing statutes of that State,
containing provisions almost identical with those of the above
quoted sections of the statute of this State, held that a mar-
ried woman could not form a partnership with her husband,
and was not liable upon a promissory note given by a firm,
of which she and her husband had agreed to be members.
Of such statutes, the court said:   "They are in derogation
of the common law, and certainly are not to be extended by
construction.    And we can not perceive in them any inten-
tion to confer upon a married woman the power to make any
contract with her husband, or to convey to him any property,
or receive any conveyance from him.  *  *  *  The property
invested in such an enterprise would cease to be her 'sole and
separate' property." *Edwards* v. *Stevens*, 3 Allen, 315 ; *Ingham*
v. *White*, 4 Allen, 412 ; *Plumer* v. *Lord*, 5 Allen, 460 ; *Plumer*
v. *Lord*, 7 Allen, 481.    To the same effect, substantially, are
the following New York cases : *Perkins* v. *Perkins*, 7 Lansing,
19 ; *Kelso* v. *Tabor*, 52 Barb. 125 ; *Corn Exchange Ins. Co.* v.
*Babcock*, 57 Barb. 222 ; *Chambovet* v. *Cagney*, 35 Super. Ct. 474.

The second error assigned by appellants is the decision of
the trial court in sustaining the demurrer of Eliza L. Shaw
to their reply to her plea of coverture. The substance of their
reply was that the personal property mentioned in their com-
plaint was sold and delivered " on the sole and separate ac-
count " of Eliza L. Shaw. This reply was a radical departure
from appellants' complaint ; and for this reason the demurrer
to the reply was correctly sustained.    *McAroy* v. *Wright*, 25

Ind. 22; *New* v. *Wamback*, 42 Ind. 456; *Bearss* v. *Montgomery*, 46 Ind. 544. ·

The next error complained of in argument by the appellants' counsel is the overruling of their demurrer to the answer of Daniel J. Shaw to their proceedings in attachment. In this answer Daniel J. Shaw alleged, in substance, that certain described articles of personal property had been attached and levied on by the sheriff of Shelby county, on the 20th day of October, 1880, by virtue of an order of. attachment issued in this action; that after such personal property had been so attached and levied on by the sheriff, the appellee Daniel J. Shaw, being then and since a resident householder and head of a family, in Shelby county, in this State, on the 29th day of October, 1880, made a schedule of all the real estate, money on hands and on deposit, rights, credits and choses in action belonging to him, Daniel J. Shaw, or in which he had any interest, on the 20th day of October, 1880, being the same day the order of attachment was issued and came to the hands of such sheriff to be executed, or since that time to the 29th day of October, 1880, which schedule included all the articles of property described in such answer, and, also, certain other described articles of property and choses in action, of which property Daniel J. Shaw, in and by such schedule, claimed $600 worth as exempt from execution and from the appellants' proceedings in attachment, and therein and thereby demanded and required of the sheriff to have the same appraised, and therein and thereby named James C. Sleeth, a householder of the neighborhood and county, as such appraiser, in his behalf, to which schedule the affidavit of Daniel J. Shaw was attached, to the effect that the same contained a full and true account of all the personal property and real estate, within or without this State, choses in action, money on hand or on deposit, within or without this State, held by him or in which he had any interest on the 20th day of October, 1880, and that none of such property had been disposed of except, perhaps, a portion of the hay, corn and

potatoes, which inventory Daniel J. Shaw, on the 20th day of October, 1880, delivered to such sheriff and demanded of him such property to the amount of $600; that the sheriff appointed one Harry Sparks, a householder of the neighborhood, in conjunction with said Sleeth, to appraise such property (appellants having failed to appoint an appraiser), who appraised all of such property and choses in action, on the 30th day of October, 1880, at the sum of $341.70, as appears by such appraisement returned by the sheriff with the order of attachment; all of which articles of personal property Daniel J. Shaw claimed and designated, as exempt from execution and from such attachment proceedings, as part of his $600 exemption from execution and attachment, and which personal property, notes and judgment, he then claimed as exempt from such attachment proceedings.

It will be seen from this summary of the separate answer of Daniel J. Shaw, that, while it set forth in detail much irrelevant and unnecessary matter, it also alleged clearly and distinctly the material facts which, if true, and appellants' demurrer conceded their truth, entitled Daniel J. Shaw to claim the attached property, described in his answer, as exempt from the order of attachment. It was incumbent on him, if he desired to secure the benefit of the exemption law, that he should interpose by answer his claim to such exemption, before final judgment should be rendered in the attachment proceedings. In section 161 of the civil code of 1852, in force at the time (section 918, R. S. 1881), it was provided that the order of attachment should " require him," the sheriff, " to seize and take into his possession the property of the defendant in his county not exempt from execution." If, in any case, the defendant claimed that his attached property was " exempt from execution," and, therefore, not subject to seizure under an order of attachment, it was absolutely necessary that he should assert such claim before final judgment in the attachment proceeding. " Whether the property attached is subject to execution

is *res adjudicata*, after judgment in attachment. The judgment against the property is a judgment *in rem*, and is as conclusive as a judgment against the person." *State, ex rel.,* v. *Manly,* 15 Ind. 8; *Perkins* v. *Bragg,* 29 Ind. 507.

In section 22 of the bill of rights, in the Constitution of 1851, it is declared that " The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." In section 703, R. S. 1881, in force since May 31st, 1879, it is provided that "An amount of property not exceeding in value six hundred dollars, owned by any resident householder, shall not be liable to sale on execution or any other final process from a court, for any debt growing out of or founded upon a contract, express or implied, after the taking effect of this act."

In asserting his claim to the attached property, under the exemption law, in the case at bar, Daniel J. Shaw showed by the averments of his answer, that he was a resident householder and the head of a family in Shelby county; that he had made out and delivered to the sheriff of such county an inventory of all his property, and had made and subscribed the necessary affidavit, as required in and by section 714, R. S. 1881, in force since July 5th, 1861, and had demanded of the sheriff $600 worth of such property as exempt from the attachment; and that the appraisement of such property, which the sheriff caused to be made, amounted in the aggregate to a sum much less than $600.

We are of the opinion that the answer of Daniel J. Shaw stated facts sufficient to withstand the appellants' demurrer thereto, and to show that he was entitled to the benefit of the exemption law, and had the right to claim the articles of property, therein described, as exempt from seizure under the order of attachment. The privilege of the debtor to claim a reasonable exemption of property, from seizure or sale for

the payment of his contract debts, is a constitutional right, and the ",wholesome laws," wherein such right is recognized and provision made for its exercise, must be liberally construed. Where, as in this case, the answer of the debtor shows that he has asserted his claim to an exemption, at the proper time and in substantial compliance with the requirements of the statute, it must be held to be sufficient on a demurrer thereto. Where the right to claim an exemption clearly exists, under the law, merely formal or technical objections will not be allowed to prevent the debtor from claiming the benefit of his exemption. In *Kelley* v. *McFadden,* 80 Ind. 536, it was said: "It is uniformly held that statutes of exemption are to be liberally construed. *Good* v. *Fogg,* 61 Ill. 449; *Kuntz* v. *Kinney,* 33 Wis. 503; *Carty* v. *Drew,* 46 Vt. 346; *Allison* v. *Brookshire,* 38 Tex. 199; *Seeley* v. *Gwillim,* 40 Conn. 106." The right of Daniel J. Shaw to claim the benefit of an exemption, in the case in hand, is not controverted by the appellants, and the only objections pointed out to his answer are purely technical and do not affect, in any manner, the substantial rights of the parties. The answer was sufficient, and the demurrer thereto was correctly overruled.

The last error assigned is the decision of the circuit court in sustaining the demurrer of Daniel J. Shaw to the appellants' reply to his separate answer to their proceedings in attachment. In this reply, the appellants alleged, in substance, that at the commencement of this suit and the delivery of the order of attachment therein to the sheriff of Shelby county, Daniel J. Shaw was the owner and holder, in his own name and right, of $2,500 in money and $2,500 in notes and accounts, and other personal property of the value of $2,500, a description of which was unknown to appellants; that at the time aforesaid Daniel J. Shaw had fraudulently concealed, in the possession of persons whose names were unknown to appellants, and in the name and possession of his co-appellee,

Eliza L. Shaw, in addition to the sums aforesaid, the sum of $2,500 in money, also $2,500 in notes and accounts, and also other personal property of the value of $2,500, a description of which was unknown to appellants; all of which property, notes, accounts and money were fraudulently concealed and withheld from the sheriff and the inventory of property delivered to him by Daniel J. Shaw, and were fraudulently concealed and omitted from the list of property, mentioned in his answer, for the purpose of cheating and defrauding the appellants, and for the fraudulent purpose of excepting the property, mentioned in his answer, from the attachment proceedings; that all the property, mentioned in such answer, was subject to such attachment and should be sold by order of the court for the payment of appellants' debt; and that the same was of the reasonable value of $1,000; wherefore, etc.

The court committed no error, as it seems to us, in sustaining the demurrer of Daniel J. Shaw to this reply. Conceding the exact truth of each and every facts alleged in the reply by the appellants, precisely as such facts are stated, it is very clear, we think, that they do not meet the case made by the answer of Daniel J. Shaw, nor show any reason whatever for denying him the right to claim the property described therein as exempt from seizure under the order of attachment. The property attached by the sheriff was the only property of Daniel J. Shaw which could be reached by the attachment proceedings in this cause; and his right to claim such property as exempt from seizure under the attachment did not depend, in any degree, upon the quantity or value of other property he might possess, or upon the disposition he had made of such other property, whether fraudulent or otherwise. If he were a resident householder of the county, and if the attached property, claimed by him as exempt from seizure under the attachment, were of a value not exceeding $600, and if it appeared that he had substantially complied with the requirements of the exemption law, he had the un-

doubted right, as it seems to us, to claim and hold such attached property as exempt from seizure under the attachment; and such right would not be defeated, nor would he be precluded from the exercise of such right by any or all the facts alleged by the appellants in their reply to his separate answer. *Douch* v. *Rahner*, 61 Ind. 64.

We have found no error in the record of this cause which authorizes or requires the reversal of the judgment below.

The judgment is affirmed, with costs.

Filed May 29, 1883.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—It is a familiar rule that statutes in derogation of the common law are to be strictly construed, and our statute of 1879, concerning the rights and liabilities of married women, is certainly in derogation of a long established rule of the common law courts. Our own cases have, with a marked degree of uniformity, held to the doctrine that a married woman has not the capacity to bind herself by any executory contract, except where the statutes have enlarged her capacity. We are not at liberty, therefore, to extend by a liberal construction the act of 1879, which so radically changes the common law rule. That act does not in terms, nor by necessary intendment, authorize her to enter into a partnership with her husband. Property in a partnership is not "sole and separate." The ownership is a joint one. The property is owned, not by the partners individually, but by the partnership. Many familiar examples illustrate the difference between individual and partnership ownership. Thus, partnership creditors are entitled to payment out of partnership property, to the exclusion of individual creditors. A widow of one partner has no interest in partnership real estate until the debts of the partnership have been paid. In legal contemplation, such real estate is, as against the widow, personal property and assets of the partnership. *Cobble* v. *Tomlinson,* 50 Ind. 550; *Huston* v. *Neil,* 41 Ind. 504. A partner can

Haas *et al. v.* Shaw *et ux.*

not claim partnership property as exempt from execution, for the reason that he has no individual interest in it. *Love* v. *Blair*, 72 Ind. 281 ; *Smith* v. *Harris*, 76 Ind. 104. Examples might be multiplied, but these are sufficient to show that partnership property is not the "sole and separate" property of a partner. As the enabling act of 1879 applies only to the married woman's separate property, we can not, without doing violence to its language, hold that it confers a right to contract in reference to partnership property. The language used is plain, and our duty is to interpret and not to construe. We can do no otherwise than hold that the words "sole and separate property" refer to the individual property of the wife, and not to property owned by a partnership.

The courts of Massachusetts and New York have given this question careful consideration, as is shown in the cases cited in the original opinion, and have reached the same conclusion as that to which we have been led. A recent writer says: "The enabling statutes confer new rights and powers, but they are limited to those necessary for the protection of her separate estate, and she has not the power to contract generally, unless the statutes expressly, or by necessary implication, gave her that power." Kelly Contracts of Married Women, 127, *n.* Many authorities are cited in support of this proposition, and we find that they do give the text full support. If this is the correct rule, and that it is we do not doubt, it is very clear that our statute of 1879 confers no power upon a married woman to bind herself by an executory contract concerning partnership property, for it, in terms, restricts her power to her "sole and separate property."

Petition for a rehearing overruled.

Filed Nov. 21, 1883.