# COMMISSION OF APPEALS,

## September Term, 1870.

THE CORN EXCHANGE INSURANCE COMPANY, Appellant, *v.*
ARMINA BABCOCK, IMPLEADED, &c., Respondents.

```
42  613
130  500
```

Where a married woman, having separate real estate, indorses her hus-
band's promissory note as his surety without consideration and without
benefit to her separate estate, but which indorsement, expresses that, for
value received she thereby "charged her individual property with the
payment of this note."—*Held*, that an action on such indorsement, in
which it is alleged the coverture of the defendant, the ownership by her of
separate estate, her intent to charge such estate with the note, and her
indorsement in the form stated, is maintainable.—*Held*, further (EARL,
Com., *contra*), that an ordinary judgment in such action for the recovery
of money is (under section 274 of the Code as amended, and the statute
of 1862), proper.
It is not necessary to make her indorsement a charge upon her separate
estate, that the contract should describe the property to be charged. It
is sufficient that it declares her intent to charge her separate estate in
general terms.

THIS action was brought upon three promissory notes, hav-
ing thereon the special indorsement of Armina Babcock, a
married woman, upon each of them, in the following form:

"For value received I hereby charge my individual pro-
perty with the payment of this note.
        " ARMINA BABCOCK."

The action was in the ordinary form, against makers and
indorsers of a promissory note, except that the above indorse-
ment was literally copied; and the complaint, alleged the
ownership by Armina Babcock, of a separate estate at the
time of indorsement, which has continued ever since, and
her intent to charge said separate estate by her said indorse-
ments; and the plaintiff proved that she had, as her separate

estate, a house and lot in Troy, worth several thousand dollars, and that the other defendants were, when the notes were given, and ever since, have been insolvent.

The notes were given in the winter of 1863 and 1864, and the suit was brought in July, 1864. The defendants appeared by the same attorneys, but interposed separate answers, denying the complaint, and alleging among other things, that the indorsement of the appellant was without consideration as to her, and solely for the benefit and accommodation of the other defendants, her husband and son.

The action was referred to and tried before Mr. Justice INGALLS as referee, who, after allowing one defence common to all the defendants, reported in favor of the plaintiff for the balance due on the notes, and judgment was entered accordingly.

Mrs. Babcock made her indorsements, in fact, as surety for the other defendants without any benefit to her separate estate, she having no interest in the transaction. The judgment was the usual general judgment in an action at law for a pecuniary sum, as damages (the amount of the notes) and the costs of the action.

The incorporation of the Corn Exchange Insurance Company and the regular protest of the notes and notice thereof to the indorsers are conceded in the case.

. A demand of about $1,400, growing out of a chattel mortgage, held by the plaintiff as collateral, was allowed by the referee upon the notes in suit.

The referee gave judgment in favor of the plaintiff for the amount due upon the notes. Armina Babcock appealed to the General Term of the third district, where the judgment against her was reversed, and a new trial was ordered. The plaintiff now appeals to this court, stipulating that judgment absolute may be given against it in the event of the affirmance of the order of the General Term.

*E. Quackenbush*, for the respondent. The judgment entered upon the report of the referee should not be sus-

tained, and the judgment of the General Term reversing the same is correct.   See (in printed case) Justice HOGEBOOM's opinion at General Term, and cases cited.   Also *Kelso* v. *Tabor* (52 Barb., 125); *Coakley* v. *Chamberlain* (8 Abb., Pr. N. S); *Costar* v. *Isaacs* (1 Robt. Sup'r Ct., 176); see dissenting opinion of the late Justice ROBERTSON, at page 183.

(*a.*) The contract does not specifically describe the separate property intended to be charged, and is therefore uncertain. A specific lien is not in any manner or in any way recognized by the law, created on any particular property.   There is no mortgage, or pledge, or any absolute or conditional conveyance of the separate estate.

(*b.*) Even were there an express charge upon specified property, the court should inquire into its propriety and not allow a wife, for the benefit of her husband, to charge her separate estate by her own mere act and will, without evidence that it was necessary, or at least, proper. (*Maywood* v. *John*, 1 Hill, Ch. R., 228.)   In this case it does not appear from the referee's report, that the wife had any interest in the transaction.   Indeed, the referee finds expressly to the contrary.

(*c.*) This is an action at law, and cannot be turned into an equitable action without violating the principles of pleading (Justice HOGEBOOM's opinion at General Term).   See also *Valentine* v. *Lloyd* (4 Abb., Pr. N. S., 371), which decides that "An action to reach the separate estate of the wife in a case within the act should be *special*, seeking that relief only; and it is not competent to join both husband and wife, and ask for a general judgment against both, as well as an execution against her separate estate."

2. The enabling statutes as controvening the common law, are to be strictly construed.   They are something more than remedial statutes.   It is well said in *White* v. *Wager* (32 Barb., 250, per MASON, J., p. 251): "Statutes are to be construed in reference to the principles of the common law; for it is not to be presumed, that the legislature intended to make any innovation upon the common law, further than the

case absolutely requires." See also *Rathburn* v. *Actier* (18 Barb., 394) ; *Kelso* v. *Tabor, supra* (52 Barb., p. 129).

The legislature may eventually, adopt a suggestion made by the Civil Code commissioners, and give wives all the rights and corresponding obligations of single women; but until it does, courts cannot by implication enlarge the few rights given, especially as the enabling statutes, already enacted, purport to provide for " the more effectual *protection* of married women."

The judgment of the General Term should be affirmed.

*R. A. Parmenter*, for the appellant. The objection first taken on the trial, that the respondent being a married woman, was improperly joined as a party with the other defendants in this action, came too late. The omission to take such objection, either by demurrer or answer, must be deemed a waiver of the same. (Code, §§ 144, 147, 148; *Fosgate* v. *Herkimer Manuf. and Hydrl. Co.*, 2 Kern, 580–4.) But the objection, if made in time, would have been unavailing. The married woman's act of 1862 provides, that any married woman may enter into any contract in reference to her separate property, and, while married, may sue and be sued in all matters having relation thereto, in any of the courts in this State, in the same manner as if she were sole. (Laws of 1862, p. 344, §§ 1, 3, 7; *Abbey* v. *Deyo*, 44 Barb., 381.)

The point, that Mrs. Babcock being merely a surety, is not liable as an indorser, until judgment shall have been recovered against the principal and execution returned unsatisfied, is without merit. There is no such rule of law applicable to this class of cases. The rule sought to be applied here, obtains in favor of the guarantor of the *collection* of a debt.

The objection that the indorsements made by Mrs. Babcock, do not evince any intention to charge her separate estate, and do not in fact so charge it, is without force. The language employed by her clearly indicates such intention. The complaint, as amended, contains an averment that the

respondent intended to charge her separate estate with the payment of the notes so indorsed, and there is no evidence to the contrary.

Nor was the objection that no sufficient consideration is expressed in the indorsements, or proved on the trial, well taken. No consideration need be, in terms, stated in the contract of indorsement. The consideration expressed in the note is always sufficient to uphold the indorsement. But then the indorsements here do express a good consideration. Each one contains the words, "for value received," and that is abundantly sufficient. And, besides, a valuable consideration for the notes was shown. (*Watson's Ex.* v. *McLaron,* 19 Wend., 563.)

As to $600 of the demands embraced in the judgment, Mrs. Babcock became surety for her son Stephen, and as to the balance she stands as surety for her husband. And it is submitted that a married woman may become surety for the debt of her husband or of a stranger, providing she execute a contract for that purpose which, fairly construed, evinces an intention to charge her separate estate with its payment. Previous to the statute of 1862, known as the married woman's act, the surety contract of a *feme covert,* could have been enforced only by a court of equity. Now there is a concurrent remedy at law.

But the intention thus to charge the separate estate of a *feme covert* could not then, nor can it now be shown *independently* of the written contract of surety. Indeed, such a contract must necessarily be in writing to avoid the effect of the statute of frauds upon it. A mere verbal contract of surety, whether made by a *feme covert* or a *feme sole,* would be void both at law and in equity. But the provision requiring the consideration to be expressed in the contract to avoid the statute of frauds, has been repealed by a recent act of the legislature. (Laws of 1863, p. 802, chap. 464, § 2; 2 Story, Eq. Jur., §§ 1400, 1401*a; Yale* v. *Dederer,* 22 N. Y. Rep., 460, 1; same case in Supreme Court, 21 Barb., 292; *Coon* v. *Brook,* 21 Barb., 546; *Barrett* v. *Lichenstein,* 39 Barb., 195;

*White* v. *Story,* 43 Barb., 124; *Abbey* v. *Deyoe,* 44 Barb., 381; *Knapp* v. *Smith,* 27 N. Y., 277; *Charles* v. *Lowenstein,* 26 How. Prac. Rep., 29.) *Demorest* v. *Wynkoop,* 3 John. Ch. R., 145.—Chancellor KENT, in this case, said: "There is no doubt that a wife may sell or mortgage her separate property for her husband's debts.")

It is not claimed on behalf of the appellant, that even now the common law disability of married women is so far removed as to permit them to bind their separate estates by their contracts at large, although Lord THURLOW so held in *Lilia* v. *Airey* (1 Ves. Jun., 277). Nor is that essential to maintain this action as brought. But it is insisted that when any such contract relates to the business in which they are engaged, or when it charges in express terms or by reasonable implication, their separate legal estate, such contract or engagement may be adjudicated by a suit in equity, or in an ordinary action at law, and the judgment recovered thereon enforced through the usual process; that is, by execution.

The doctrine that a *feme covert* has the *power* to charge her separate estate with the payment of her husband's debts, or any other debt contracted by her as surety, has been uniformly sanctioned, for a long period of time, by the English and American courts of equity. (*Hulme* v. *Tenant,* 1 Brown C. C., 16; *Stanford* v. *Marshall,* 2 Atk., 69; *Field* v. *Sowle,* 4 Russ. R., 112; *Bullpin* v. *Clarke,* 17 Ves., 365; *Demorest* v. *Wynkoop,* 3 John. Ch. R., 145; *Jaques* v. *Methodist E. C.,* 17 John., 548; *Dyett* v. *N. A. Coal Co.,* 20 Wend., 573; Story Eq. Jur. Sec., 1396, 1401*a;* Willard Eq. Jur., 549; *Cruger* v. *Cruger,* 5 Barb., 225; *Vanderheyden* v. *Mallory,* 1 Comst. R., 462; *Yale* v. *Dederer,* 22 N. Y., 450; same case in 18 N. Y., 276; *Barrett* v. *Lichtenstein,* 39 Barb., 195.).

(1.) But in respect to the manner in which that conceded power must be exercised, and the requisite evidence of its due execution, the same unanimity has by no means prevailed. In some instances, too, the power of disposal has been prohibited or restricted by reason of the peculiar character of

the trust or title under which the separate estate was created. And again, a diversity of judicial opinion has existed as to he essential requisites of the instrument creating the charge. It has been held that a parol agreement was sufficient. In this State, however, the form of the instrument by which the charge is created is settled by the decision of *Yale* v. *Dederer*. (22 N. Y. Rep., 450). The *intent* to charge the husband's debts upon the separate estate of the wife, must be either expressed or implied in the terms of the contract.

(2.) Courts of equity have held repeatedly that a *feme covert*, either as a principal or as a surety, may encumber or charge her separate estate by any act done or written engagement entered into by her, which shall clearly evince an intention to create such charge. The character of the instrument or the formality of its execution, provided the intention be expressed and the statute of frauds avoided, has never been regarded as a controlling fact. For the purpose of creating such charge, a simple contract in writing is just as effectual as an instrument under seal, in the nature of a mortgage. Nor need a specific description of the separate property be given.

In *Vanderheyden* v. *Mallory* (1 Comst. R., 463), this court said: "The doctrine of appointment or appropriation in equity, however, relates wholly to engagements made or debts contracted by a married woman *as such*, having a separate estate and in reference to it. It has no application to debts contracted or engagements entered into by a *feme sole*." And that answers the doubt expressed by Mr. Justice HOGEBOOM in his opinion. When considering the effect of Mrs. Babcock's indorsement, he said: "No man, I think, could legally mortgage or pledge his property in that way; and I doubt whether any woman can. The learned judge must have forgotten that in this respect the power of a married woman *as such*, excels that of any man. Mrs. Babcock indorsed these notes of her husband and her son, who were insolvent, and over such indorsement she wrote the words, "For value received, I hereby charge my individual property

with the payment of this note." That engagement, according to all the authorities, created a valid charge. Story says : "But where the wife becomes a party to an accommodation note as surety, merely, her separate estate is not liable for the payment of it, unless she expressly charge it for that purpose. (2 Story's Eq. Jur., § 1401a.)

In *Barnett* v. *Lichenstein* (39 Barb. R., 194), a promissory note was made by the wife as surety for her husband. It was declared in the note, that the consideration was for the benefit of her separate estate, which was proved to be untrue, and it was also stated therein to be a charge on her separate estate. It was held to be a valid charge.

And this court, in *Yale* v. *Dederer* (22 N. Y. R., 450), decided in the same way. The court will remember the facts and history of the case of *Yale* v. *Dederer*. In December, 1853, Mrs. Dederer signed a promissory note with her husband, and as his surety. The husband was insolvent. The note contained no declaration of her intention to charge her separate estate with its payment. The court, before whom the action was tried, held that a charge had been created, and directed payment out of the separate estate of Mrs. Dederer. (21 Barb., 286.) This court reversed that judgment. (18 N. Y. R., 265.) At page 276, Judge Comstock said : "Of course, it is not to be denied that a wife may appoint or specifically appropriate her separate estate to the payment of her own or her husband's debts. She may, if she pleases, even give it to her husband. What I am denying is, that contracting the debt is, of itself, an appointment or charge." And at page 284, Judge Harris said : "I think that in such a case the equitable rule is that which has been invariably adopted in this State, which is that *where the intention to create the charge has not been expressed*, and can only be implied from the fact that she has become indebted either individually or jointly with her husband, it must appear that the debt was contracted for the benefit of her separate estate, or for own benefit upon the credit of her estate, before the estate can be charged with its payment.

In the case before us there is an entire absence of such proof.
Indeed, the contrary is proved. Instead of being the debt
of the wife, it is proved to be the debt of the husband.
There is no evidence that the wife consented to have the pay-
ment of this note charged upon her separate estate, except
such as is derivable from the fact that her signature is found
upon the note."

That cause was retried, and the only additional fact proved
on the new trial was, that at the time of signing the note,
"Mrs. Dederer remarked that if her husband was not able
to pay it, she was." The judge found from that declaration
that she intended to charge her separate estate with the pay-
ment of the note. Judgment was again directed in favor of
the plaintiff, and Mrs. Dederer brought appeal to this court.
(See 22 N. Y. R., 450.) A new trial was granted on the
ground that the intention to charge her separate estate was
not stated in the note itself.

Had Mrs. Dederer, in the body of her note, employed the
same language that Mrs. Babcock did in her indorsements,
viz.: "For value received, I hereby charge my individual
property with the payment of this note," there can be no
doubt this court would have sustained that judgment. Judge
Selden's opinion admits of no other construction. And at
the end of the case, the reporter says: "A majority (of the
court) concurred in the opinion that the intention to charge
the separate estate must be stated in the contract itself, or
the consideration must be one going to the benefit of the
estate." Had the court there entertained the opinion
expressed by Justice Hogeboom in the case at bar, it would
have been distinctly promulgated. It is submitted that
*Yale* v. *Dederer* is authority for enforcing the engagement
of Mrs. Babcock out of her separate estate by a court of
equity.

But the plaintiff was not obliged to resort to a court of
equity for his remedy to enforce the payment of the notes in
suit out of the separate estate of Mrs. Babcock. These
indorsements were made after the married woman's act of

1862 went into effect. Under that act, it is submitted a married woman, as a surety, may make a legal contract to charge her separate estate, if the intention to do so be expressed or fairly implied in the contract itself; and that she may be sued on such contract, and her liability enforced against her separate estate in an action at law, the same as if she were an unmarried female. (See Laws of 1862, p. 343; also Laws of 1860, p. 157.)

The act of 1860, as amended in 1862, is a remedial statute, and its provisions should receive a liberal construction, so that the intent of the legislature may be carried into effect. (*Derby* v. *Callahan*, 16 N. Y. R., 79; *Sherman* v. *Elder*, 24 id., 384; *Billings* v. *Baker*, 28 Barb., 343, 347, 351, 356, 357.) Thus construed, we may make the following analysis of the provisions material to the question now under consideration:

(1.) By section 2 of the act of 1860, a married woman may bargain, sell and transfer her separate personal property, and carry on any trade or business in her own name, and her earnings shall be her sole and separate property, which may be used or invested in her own name.

(2.) By section 3, as amended in the act of 1862, any married woman possessed of real estate as her separate property, may bargain, sell and convey such property, and enter into any contract in reference to the same with the like effect in all respects as if she were unmarried. The authority conferred in the last above clause had never before been given to a married woman in this State by statute law.

(3.) By section 7, as amended in 1862, any married woman may, while married, sue and be sued, in all matters having relation to her sole and separate property, in the same manner as if she were sole. And if in such suit any bond or undertaking be required, it may be executed by her with the same effect in all respects as if she were sole.

(4.) By section 8, as amended in 1862, the husband and his property are relieved from all liability on account of any bargain or contract made by his wife in respect to her sole

and separate property, or entered into by her in or about the carrying·on of any trade or business by her.

(5.) By section 5, of the act of 1862, the husband is absolved from all liability for the payment of any costs incurred or awarded in any suit so brought by or against his wife.

(6.) And by section 7, of the amended act, a married woman may be sued *in any of the courts of this State;* and whenever a judgment shall be recovered against her, the same may *be enforced by execution* against her sole and separate estate, in the same manner as if she were sole.

These recent enactments confer new and valuable rights and privileges upon a married woman, and, at the same time, they impose upon her and her separate estate corresponding duties and obligations. It was manifestly the intention of the legislature to give a married woman the same *status* as an unmarried woman, in respect to the acquiring, holding and disposing of real and personal property, and in the execution and enforcement of contracts and engagements relating to, or creating a charge upon or in any way affecting her separate estate. Such equality before the law, between the *feme covert* and the *feme sole,* would not be maintained if the rights and obligations of the married woman, incident to or growing out of or charged upon her separate estate, could not be adjudged and determined in a court of law. If a court of equity must still be invoked, the statute of 1862, which declares that she may be sued in any of the courts of this State, and judgment enforced by execution against her sole and separate estate, in the same manner as if she were sole, becomes nugatory. In construing a statute, effect must be given, if possible, to every part of it. Thus construed, it becomes apparent that the purpose of those two enactments was to authorize a married woman, within certain prescribed limits, to make.a legal contract which could be adjudicated and enforced in an ordinary action at law. These statutes constitute the married woman's new code, under which, without abolishing the ancient remedy for the enforce-

ment of her engagements, by proceedings in equity, concurrent jurisdiction is given to courts of law.

Indeed, in *Yale* v. *Dederer*, which case arose before and was decided after the act of 1860, but previous to the amendment of 1862, Judge SELDEN adverted to the probable future course of legislation on the subject of the rights and obligations of married women, in respect to their engagements affecting their separate property, and the manner of enforcing the same. And his prophesy has been fulfilled.

If, on the merits, this court shall hold, that by her written engagement indorsed on the promissory notes of her insolvent husband and son, Mrs. Babcock charged her separate estate with the payment of these notes, judgment absolute ought not to be rendered against the appellant on this appeal, even though the court shall reach the conclusion that the personal judgment against Mrs. Babcock was irregular. In that aspect of the case the assent by the plaintiff in its notice of appeal should not estop the court of last resort from awarding an effectual judgment, one which will carry out the decision of the court. The order for a new trial may be so modified as to direct the complaint to be dismissed as against Mrs. Babcock with leave to the plaintiff to prosecute her in a suit in equity; or this court, all the facts being out, may order final judgment against Mrs. Babcock to be enforced out of her separate property only.

The facts alleged in the complaint as amended and proved on the trial, would have warranted adequate equitable relief to the plaintiff had it been therein demanded; and we were before the appropriate tribunal. (*Barlow* v. *Scott*, 24 N. Y. R., 45–6; *Bradley* v. *Aldrich*, 40 N. Y. R., 504.)

But on the whole case we submit that the order for a new trial should be reversed and the judgment entered upon the report of the referee affirmed with costs.

HUNT, Com.   Several objections are made to the plaintiff's right of recovery, which I will consider in their order:

1st. It is said that the action is not proper in form; that it

should be special under the statute, alleging the facts and asking that the separate property of the defendant be subjected to the payment of the debts in question. This objection is not valid. The complaint is special. The allegation of a separate estate in the wife, of her intent to charge it by the indorsements in question, together with proof of her separate estate, and of the insolvency of the other defendants, are all of a special character. They refer to the character of the defendant as a married woman. They would be quite unmeaning in an action upon an ordinary indorsement. Again by the acts of 1860 (p. 158), and the act of 1862 (p. 344), a suit is authorized to be brought against a married woman, "in all matters having relation to her sole, and separate property * * in the same manner as if she were sole," and "a married woman may be sued in any of the courts of this State; and whenever a judgment shall be recovered against a married woman, the same may be enforced by execution against her sole and separate property, in the same manner as if she were sole." These provisions are incorporated into the Code by amendments to sections 274 and 287. The facts are set forth, the proof is made, and the rights of the parties are properly before the court for adjudication.

2d. It is argued that the contracts described in the complaint, were not, in fact, for the benefit of Mrs. Babcock. The general subject embraced in this suggestion, will be more fully considered under a subsequent point. It is sufficient to say, in answer to this specific objection, that neither the statute, nor the authorities limit her ability to charge her estate to cases, in which the contract is for her personal benefit. Her real and personal property are secured to her, in the same manner, as if she were a single female. (Laws 1848, p. 307.) By the statute of 1860, the property of a married woman, shall remain her sole and separate property, notwithstanding her marriage. (Laws 1860, p. 157.) This property, both real and personal, she is authorized to sell, transfer, and convey. (*Id.*) It is further enacted by the

same statute, that a married woman may sue and be sued in all matters relating to her separate property, in the same manner as if she were sole.   When a married woman assumes to act in reference to her separate estate, the question is not whether her action is really for her own benefit.   The right to act, and to bind her estate, carries with it the right to act unwisely, and to her own injury, if she so wills.   The fact that her action is for the benefit of her property, is, no doubt, one ground on which it may be subjected.   It is not, however, the only one.

I have considered these points with reference to our statutes; as, in my judgment, this case comes within those statutes, and the form of the action, the form of the judgment, and the execution upon it, are to be regulated by them.   They are right in form under the provisions of our statutes.

3d.   The third objection, and which seems to have controlled the decision of the court below, is to the form in which the charge upon the estate is made.   It is insisted that the instrument creating the charge should contain a description of the property intended to be charged, or at least a reference, by which it can be identified.   The court below say: "If she attempted to make a deed or conveyance of her property in such a way, it would be plainly illegal; and I think neither of the acts of bargain, sale or conveyance, which in the previous part of the same sentence (of the statute) she is empowered to make, would be well executed by a simple statement in writing, 'For value received I hereby bargain (or sell or convey) my individual property to A. B.'   It appears to me, it would be rejected for indefiniteness as well as for non-compliance with the forms of law; and I am strongly inclined to think that the loose and indefinite language contained in this instrument is a decisive objection to its validity."   In announcing their conclusion to grant a new trial, the decision is based upon grounds thus expressed:  "That there is no occasion or justification for any departure from the established principles and proceedings of a court of equity, which require, in order to make and enforce a valid charge, a specific description of

the property, in the instrument creating the charge, executed according to legal formalities, and enforced in equity under a complaint seeking as relief, not a general judgment, but the satisfaction of the charge and of the specific property subjected thereto ;" and again, that " the act of 1862, empowering a married woman possessed of real estate as her separate property, to bargain, sell and convey the same, and to enter into any contract in reference thereto, with the like effect in all respects as if she were unmarried, refers to such modes and forms of bargain, sale and conveyance of real estate, and contracts relative thereto, as were recognized as legal and were in conformity with the law as expounded in judicial tribunals at the time, and does not sanction a contract or charge of the kind now under investigation." The respondent's counsel expresses clearly the same idea in his first point thus : " The contract does not specifically describe the separate property intended to be charged, and is therefore uncertain. A specific lien is not in any manner or in any way, recognized by law, created on any particular property. There is no mortgage or pledge, or any absolute or conditional conveyance of the separate estate."

This proposition was sustained not only in the present case, but by the General Term of the fourth district in the case of *Kelso* v. *Tabor* (52 Barb. 125). Entertaining great respect for the learned judges composing these courts, I have given to the question a careful and deliberate examination.

The act for the more effectual protection of married women, passed April 7, 1848, enacts as follows : " § 1 The real and personal property of any female who may hereafter marry, and which she shall own at the time of her marriage, and the rents, issues and profits thereof, shall not be subject to the disposal of her husband nor be liable for his debts, and shall continue her sole and separate property as if she were a single female." (Ch. 200, p. 307.) The second section makes the same enactment as to the property of " any female now married," except that the same may be liable for the debts of

her husband theretofore contracted. The third section, as amended by the act of 1849 (ch. 375, p. 528), enacts as follows : " Any married female may take by inheritance or by gift, grant, devise or bequest, from any person other than her husband, and hold to her separate use, and convey and devise, real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband nor be liable for his debts."

The statute of 1860 (ch. 90, p. 157) reaffirmed and, in some particulars, enlarged this authority. In the third section thereof it is enacted that " any married woman, possessed of real estate as her separate property, may bargain, sell and convey such property, and enter into any contract in reference to the same; but no such conveyance or writing shall be valid without the assent in writing of her husband, as hereafter provided." By the act of 1862 (ch. 172, p. 344), the restriction that the conveyance must be accompanied by the assent of the husband, was repealed.

It will be observed that these statutes contain the expressions, " her separate property, as if she were a single female," and " to her separate use in the same manner and with the like effect, as if she were unmarried." The condition of a married woman, holding property to her separate use, as if she were a *feme sole*, was well understood in the jurisprudence of this country at the time of the passage of these acts. It had been in use in England and in this country for a long time. It had been the subject of legal determinations for more than a hundred years. When the legislature use this well known description, they use it with reference to its equally well known meaning. To ascertain, therefore, whether a married woman can now and here subject her separate property to the payment of a debt like that before us, by an instrument like that before us, we must refer to the former adjudications respecting a married woman, who held property as if she were a *feme sole*.

The first case in this State, where this general question of the rights of a married woman, thus holding property, arose, was that of the *Methodist Episcopal Church* v. *Jacques* (3 John. Ch. Cas., 17). The opinion of Chancellor Kent is learned and exhaustive, embracing a full review of all the English cases. He held, in substance, that the legal incapacity of the wife to convey or to bind her estate, was relieved only so far as the language of the trust gave express power to dispose of the property; that she was authorized to dispose of the trust estate only in the manner expressly provided for in the instrument creating it. He held, therefore, that the disposition made by the wife and husband, by mutual assent, but without the formalities indicated in the deed of settlement, were invalid, and charged the husband with the sums received under that arrangement.

This case was carried to the Court for the Correction of Errors, where it was elaborately argued by Thomas Addis Emmet and Baldwin, for the appellant, and Samuel Jones and Harrison, for the respondents. (17 John's. R., 548.) Opinions, concurring in overruling the decision of Chancellor Kent, were delivered by Ch. J. Spencer and Judge Platt. It was established that a *feme covert* with respect to her separate estate, is to be regarded as a *feme sole*, and may dispose of her property without the consent of her trustee, unless she is specially restrained by the instrument under which she acquires it; and though a particular mode of disposition be pointed out in the deed of settlement, it will not preclude her from adopting any other mode of disposition, unless there are negative words restraining her power of disposition, except in the very mode so pointed out.

In *The North American Coal Co.* v. *Dyett* (7 Paige, 9), the question was again before the court. By an ante nuptial agreement Mr. and Mrs. Dyett had conveyed a house and lot in the city of New York belonging to the wife, to trustees upon the following trusts, among others: To sell and convey upon the written consent of husband and wife, and invest the proceeds in other securities, with power

of changing the same from time to time upon like written
consent. The proceeds were to be paid over as provided for
in various contingencies. Among others upon the insolvency
of Mr. Dyett, " they were to be paid over by the trustees to
the wife to her sole and separate use in like manner as if she
were a *feme sole*." After sundry transfers, the estate became
invested in a manufacturing establishment in Poughkeepsie,
which was carried on for the benefit of the estate, Mr. Dyett,
who had, in the mean time, become insolvent, and had been
discharged under the insolvent act, acting as the agent of the
trustees. The factory, being in need of coal for its work, pur-
chased a cargo of the plaintiffs, for which Mr. Dyett gave a
draft at sixty days on Mr. Livingston, the formal agent of the
factory. This draft was accepted by him but was never paid.
The plaintiffs filed their bill against Dyett and wife and the
trustees, for the purpose of subjecting the trust estate to the
payment of this debt and other similar claims. The bill was
sustained and judgment given for the payment of the plain-
tiffs' debt. The case was carried to the Court for the Correc-
tion of Errors, and was there affirmed. (20 Wend., 570.) The
chancellor lays down the rule thus : " The *feme covert* is as
to her separate estate considered as a *feme sole*, and may in
person or by her legally authorized agent, bind such separate
estate with the payment of debts contracted for the benefit of
that estate, or for her own benefit upon the credit of the
estate." He refers to numerous English cases, and the *Metho-
dist Church* v. *Jacques*, *supra*. In the Court of Errors, Mr.
Justice COWEN, upon the point that Mrs. Dyett's admission
in the answer that Livingston was her agent, was not binding
upon her, remarks : " It is said that such an answer is not to
affect her interests, although she joined in it; that it is still
but the answer of her husband and this, I agree, is in general
so. I am not aware, however, that the rule has ever been
applied to a wife, who is sued in respect to her separate estate.
The bill is in the nature of an action at law against her for
the recovery of a debt; and although her person is not liable,
she is proceeded against in respect to her estate as a *feme*

*sole.*    Having an estate which she is capable of charging by her contract in the first instance as a *feme sole*, it seems to follow that her admissions, by way of answer or otherwise, are to be received in evidence against her.    Where her separate estate is completely distinct, and, as here, independent of her hus-band, she seems to be regarded in equity as respects her power to dispose of or charge it with debts, to all intents and purposes, as a *feme sole* except in so far as she may be expressly limited in her powers by the instrument unde which she takes her interest."    This action was against the wife in person, and settles two principles: 1. That the estate of a married woman is liable to the payment of a debt con-tracted for the benefit of such estate.    2. That the instrument contracting the debt need not contain any description of or reference to such property intended to be benefited or held to be bound.

*Yale* v. *Dederer* came first before the Court of Appeals in 1858.    (18 N. Y. R., 265.)    In that case, Dederer had bought thirty-eight cows of the plaintiff, who refused to complete the sale, unless his wife would sign with him a note for the price of the cows.    Mrs. Dederer did, therefore, sign the note.    An action was brought upon it against Dederer, judgment recov-ered, execution issued, returned unsatisfied, and an action then brought against the wife.    She was proved to have a separate property in real and personal estate, amply sufficient for the payment of the note.    The judge at the special term, ordered judgment against her, charging her separate estate with the payment of the note.    The judgment was affirmed by the General Term of the sixth district, and Mrs. Dederer appealed to the Court of Appeals.    In delivering the opinion reversing the judgment and in commenting upon the statutes of 1848–9, Judge COMSTOCK says: " My conclusion, therefore, is, that although the legal disability to contract, remains as at common law, a married woman may, as incidental to the perfect right of property and power of disposition, which she takes under this statute, charge her estate for the purposes and to the extent which the rule in equity has heretofore sanctioned in reference

to separate estates." (Page 272.) The judgment was reversed upon the ground, that the mere signing of a note by a married woman, not in fact for the benefit of her estate, but as surety for another, and not declared in the note to be for her benefit, and where she had not professed in the contract to charge such estate, did not operate as a charge upon the estate. This judgment was not unanimous; Judges DENIO and ROOSEVELT dissenting, and Judge STRONG not voting, doubtless upon the ground that it was in hostility to the English authorities.

The same case came again before the Court of Appeals in 1860. (22 N. Y. R., 450.) The facts were as before stated with two additions. It was found, first, "that Mrs. Dederer became seized in fee of her real estate, subsequent to the act of 1848 ; and, secondly, that Mrs. Dederer intended to charge, and did expressly charge her separate estate for the payment of the note." The court held, that in order to charge the separate estate, the intention to do so must be declared in the very contract which is the foundation of the charge, or the consideration must be obtained for the direct benefit of the estate itself. Judgment was ordered accordingly in favor of Mrs. Dederer.

In each of the examinations of *Yale* v. *Dederer* as well as on each of the hearings of the *Methodist Church* v. *Jacques*, the body of the English law, in respect to separate estates of married women, is brought in review ; the opinions of the various chancellors are discussed ; the discordant reasons upon which the law was maintained, the cases overruled and that should be overruled, examined ; but in the whole array is not to be found an authority that the contract of the married woman, must contain a description of the estate she proposes to charge.

*Owen* v. *Cawley* (36 N. Y. R., 600), was an action to recover for professional services rendered to a married woman for the benefit of her separate estate. The defendant carried on a skip chandlery business under the agency of her husband, who employed the plaintiff to collect various demands arising out of the business. The court sustained the recovery

against her, laying down the law in this language: " Where services are rendered for a married woman by her procurement, on the credit and for the benefit of her separate estate, there is an implied agreement and obligation springing from the nature of the consideration, which the courts will enforce, by charging the amount on her property as an equitable lien. Where a charge is created by her own express agreement for a good consideration, though for a purpose not beneficial to her separate estate, or even for the sole benefit of her husband, she is bound in equity by the obligation she thus deliberately chooses to assume." In that case, there was not only no description of, or reference to, the separate property, but there was not even a written contract of any character.

In *Ballin* v. *Dillaye* (37 N. Y. R., 35), it appeared that Mrs. Dillaye was a married woman, having separate property; and that in 1860 she purchased, at a mortgage sale, certain premises under a special agreement. Among other things, she recognized a prior mortgage upon the same premises, and agreed to pay the same, and secure such payment by a new mortgage to be executed by herself. She received a conveyance of the property and executed a new mortgage, omitting thereby two lots, to which she received an unencumbered title. Mrs. Dillaye's mortgage was foreclosed in 1864, and on the sale there was a deficiency of more than $600, which the plaintiff sought to make a charge against her other separate property. The plaintiff offered to prove that she had such other separate property to the value of $10,000. The Special and the General Term held, that no judgment could be entered against her for the deficiency, deciding, as a matter of law, that a married woman is not personally bound by her agreement to pay the purchase price of real estate, which she purchases for her separate property, although she has a separate estate. (Page 37).

This judgment was reversed in the Court of Appeals, PARKER, J., delivering the opinion. He says: "I have no doubt, therefore, that in the case at bar, the obligation, which the defendant took upon herself by the execution of the

bond, was for the benefit of her separate estate, which is, therefore, chargeable in equity with the payment of the deficiency in question. In such case, the liability attaches not as a specific lien, on any particular portion of her estate, but upon the whole of it. Her separate estate, as a whole, becomes liable for any indebtedness contracted by her, for its benefit, to any extent." There was not only no description in this case of the property sought to be charged, but the liability arose upon the purchase of another piece of property, different and distinct from it.

Similar to this in its principles, and in the ruling upon it, was the case of *White* v. *McNett* (33 N. Y. R., 371). The action was upon a guaranty executed by a married woman and her husband, on the transfer of her mortgage, and the recovery against her upon the guaranty was sustained as a charge against her individual property.

These are the material authorities in this State, bearing upon the point under discussion.

I will now refer to the English authorities. Mr. Clancy thus lays down the rule. "In the preceding chapters, an attempt has been made to elucidate and explain the rule "that a *feme covert*, acting with respect to her separate property, is competent to act in all respects as if she were a *feme sole;* and all the cases seem to concur in affixing this meaning to it, that whenever a married woman acquires property to her separate use, exclusive of her husband, she may deal with it as she pleases, and may exercise over it every right, which she could possess, if she were unmarried." (Clancy's Husband and Wife, 331, 2d Am. ed., 1837.)

In *Norton* v. *Turvill* (2 P. Wms., 144), the separate estate of a married woman was held liable for her bond for £25, made by her for money borrowed by her; and in *Stanford* v. *Marshal* (2 Atkins, 68), where two married women joined their husbands in bonds for money lent, it was ordered that the rents and profits be paid over to the creditors in liquidation of their debts.

In *Hulme* v. *Tenant* (1 Br. Ch. C., 16), the husband bor

rowed of the plaintiff £50, for which he gave as security a
bond, executed by himself and wife. The following year
having occasion for a further sum, the husband applied to
the plaintiff for £130, which was advanced, and a new bond
for £180 given by the husband and wife for the amount, the
wife at the same time paying the interest on the previous loan.
On a bill filed to enforce the bond as a charge against the
separate property of the wife, it was objected "that the
security must be agreeable to the nature of the property; it
must be a security which would be a lien upon it, such as a
mortgage would be; that the act done by a married woman,
in order to bind her estate, ought, by some means, to refer
to it; but that the bond in the present case had no reference
whatsoever to any property." Lord THURLOW said he had no
doubt of this principle; that if a court of equity says that a
*feme covert* may have a separate estate, the court will bind
her to the whole extent as to making that estate liable to her
own engagements, as for instance to the payment of debts;
but he did not find that the court had ordered a power to be
executed, they had only stopped the fund where the power
was executed. He could not, therefore, order the power to
be executed, but he was exceedingly clear that the lease held
was liable. A reference was ordered to take an account of
the rents and profits, and that the plaintiff's bond should be
paid therefrom. It is but just to say that the case was after-
ward questioned by Lord ELDON, in *Nantes* v. *Conoch* (9
Vesey, 188), and *Jones* v. *Haines* (9 Vesey, 497).

Notwithstanding the doubts of Lord ELDON, this doctrine
was subsequently reiterated in numerous cases. *Heatley* v.
*Thomas* (15 Vesey, 596), was this: William Johnson and Sarah
Smith, a widow, intermarried. Previous to the marriage,
a sum of £2,000 and an annuity, to which Mrs. Smith was
entitled, were vested in trustees for her sole and separate use,
with power, by will or other writing, to dispose of the same
as she should appoint. Mrs. Johnson made a will and
appointment. She also executed a bond to the plaintiff as
security for a person who afterward became bankrupt. A

bill was filed against her executors, and those of her husband, praying that her separate estate should be made liable to the payment of the principal and interest due by the bond to the plaintiff. After much argument the case is thus stated. " The principal question in this case was whether the bond of the *feme covert*, during her coverture, could be considered a valid charge on the separate estate, and his honor (Sir William Grant) held that it was a valid charge, although she had a power of appointing only by will." (Clancy, 103.)

The case of *Bulpin* v. *Clarke* (17 Ves., 365), was still later, and was to the same effect. There the property was conveyed to trustees, to receive the rents and profits, and pay the same to such persons and to such uses as Margaret Clarke should, during her life, direct and appoint. The bill was filed against Clarke and wife and trustees, stating that she had borrowed £250 upon her promissory note, which she promised to repay out of her separate estate. It was argued that the note was not an execution of the power, as it had no reference to her separate property, and that a court of equity had no right to apply the rents and profits of the separate estate of a *feme covert* to the discharge of a debt. The decree directed the payment of principal and interest out of the separate estate. See also *Boner* v. *Bailey* (1 Ball & Beatty, 49), and *Clerk* v. *Miller* (2 Atk., 374); *Gregory* v. *Lockyer* (6 Mad., 90), and the summing up of Mr. Clancy at page 346 of his work. He says: " So the present state of our law on this part of our subject seems to be this; that if a married woman, having separate property, execute a bond or note, or any other instrument, by which she pledges herself for the payment of money, that property will be bound by her engagement, though the instrument which she has signed does not purport to be a lien upon the estate. But, on the other hand, that if the demand against her arise merely from an implied undertaking, then it cannot be executed out of such separate estate."

In *Murray* v. *Beebe* (4 Sim., 82), it was held that, where a married woman, having separate property, living apart from

her husband, employed the plaintiffs as her solicitors, and promised them by letter that she would pay their bills, but did not refer to her separate property, that her separate property was liable to pay the bills.   The bill filed to enforce payment was demurred to on the ground that the general engagement of a married woman does not affect her separate property, and that the letters contained no reference to her separate property.   The demurrer was overruled.

In *Owens* v. *Dickenson* (1 Craig & Ph., 48), the same rule is laid down; and it is held by Lord BROUGHAM that the doctrine is applicable to all debts whether written or verbal.

The very recent case of Mrs. Matthewson (English Law Rep., 3 Eq. Cas., page 781, 1866), and of *Butler* v. *Compton* (7 id., page 16, 1869), reiterate the same doctrine.   They were both cases under the contribution acts, where the separate estate of the married woman was charged as a contributory, upon the ground that, in giving the order for the purchase of the stock, she had intended to charge her separate estate, and had done so.   In neither case, was there any description of the property intended to be charged.

In *Shattock* v. *Shattock* (3 id., 182, 189), Lord ROMILLY lays down, in substance, the same doctrine, but insists upon the long contested proposition that the power of charging the estate comes from the power of appointment or disposition, and not from the power to contract.

In *McHenry* v. *Davies* (10 id., page 88, equity series, August, 1870), Lord ROMILLY held, where a married woman, living abroad alone, under circumstances which led to the belief that she was a *feme sole*, indorsed a bill of exchange and drew a check on her London bankers, for the purpose of enabling T., who acted as her agent, to raise money, the bill and check being cashed by a banker in Paris and dishonored, that the separate estate of the married woman was liable to make good the amount, and that the equities between herself and T. could not be inquired into.

Among all these cases there is not one that holds that, where a married woman, having separate property, incurs

a liability for which she declares, at the time of incurring it, and in the instrument by which it is incurred, that her separate estate shall be held, that the separate property does not become charged.   At least, I may say, after a diligent examination, that I have met with no such case either in the English courts or those of the last resort in this State.   There are, however, several in which the precise objection has been made and overruled.

There is no more propriety in the principle sought to be sustained than there would be in holding that the promissory note of a male adult must describe the property seized on execution issued on a judgment recovered upon the note. In each case, the note or bond creates a binding obligation. The law holds all of the property of the maker or obligor responsible for its satisfaction. The judgment, when recovered, creates the lien. When the proceeding was strictly one in equity, it may have been necessary that the judgment should specify the property against which the process should issue. Under our statutes, the suit, the judgment and the execution are in the ordinary manner of suits at law.

While, as has been seen, there has been some contest on the proposition whether a general engagement would subject the separate property of a married woman to the payment of her debts, the principal controversy has been as to the ground upon which this liability should be placed. On this point there will probably continue to be a difference of opinion. Our statute (1860, page 197) gives to the married woman formal authority to "enter into any contract in reference to the same." It may also well be rested upon the principle of *jus disponendi*. The law gives the married woman the practical ownership of the property. She has the power of dealing with it at pleasure. She therefore has the power to bind it for the payment of her debts.

Under our decisions, the liability arises *ipso facto* where the debt is for the benefit of her estate. Where she incurs liability for another, there is required then the further condition that the intent to make the charge must be declared

in the contract creating the indebtedness.  (*Yale* v. *Dederer*, *supra*.)  The English authorities do not require the existence of this condition.  Her bond, in the ordinary form of a surety for another, will create a charge upon the estate. (Auth., *supra*.)

I do not see that the question whether the estate is legal or equitable, or whether it was received before or after 1848, has anything to do with the case.  Under the English system, trustees were not indispensable.  The property might be conveyed to the wife directly, and for her separate use.  (2 Roper on H. and W., 229.)  This would give her a legal estate.  Under our laws, the married woman may take " by inheritance, gift, grant, devise or bequest," words implying legal estates; and when she has thus taken, she holds " to her sole and separate use in the same manner and with the like effect as if she were unmarried."  The equitable estate of a *feme sole* under the old system, if that was its necessary form, defines the rights of a married woman now having control of a legal estate.  Nor do I perceive how the time when she receives the estate can be important, except so far as there may be a claim by the husband or by his creditors, where the marital rights had attached prior to 1848.

Upon the whole case, the order of the General Term should be reversed, and the judgment of the Special Term affirmed, with costs.

GRAY, Com.  The object of the statute of April 10th 1862 (Session Laws of 1862, pp. 244, 245), was to enable married women holding real estate as their separate property, under the authority of that and prior enactments, to manage and dispose of it without the intervention of trustees or hindrance from their husbands, and to sue and be sued in all matters having relation to their separate property. It did not remove from them any of their common law disabilities in reference to any contracts not made for their own benefit or pertaining to their separate estate.  The indorsement in question was not for either, and is therefore left to

:be disposed of ·by the rules of the common law, under ·which her estate could not be charged as mere indorser. (*Yale* v. *Dederer*, 18 N. Y., 265 ; *Same* v. *Same*, 22 id., 450.) These cases were severely litigated ; in the first of which it ·was held, by a divided court, that the estate of Mrs. Dederer could not be charged with the payment of a note signed by her with her husband, and as his surety. On ·the second trial, parol evidence was admitted, under exception, to estab-·lish her intention to charge her separate estate with its pay-ment ; and when the case was a second time up, this question .was considered, and was, in reality, the only one presented varying the case from what 'it was when first considered and decided. In the latter case Justice SELDEN, in delivering the opinion, held, that the court erred in admitting parol evidence . to establish her intention to charge her separate estate ; and we are warranted, as I think, in understanding from the report of the case, that a majority of the court held with him upon this ground alone, and would, with him, have held otherwise, if her intention was, in that case, as Mrs. Babcock's has in this, been manifested in the writing subscribed by her. I am therefore of opinion that the estate of Mrs. Bab-cock was, upon a just view of the case last cited, well charged with the payment of· the note indorsed by her ; and that it :should be affirmed, but so modified that the execution to be issued should be against her separate estate.

EARL, Com. The defendant, ·a married woman, is ·sued upon her contract of indorsement upon the back of several ·promissory notes, and the most important question to be . determined by us is, whether she has entered into such con-·tract in such way as to bind her separate estate. .The acts of ·1848, 1849, 1860 and 1862, in reference to the rights ·and liabilities of married women, authorise·a *feme covert* to enter into· contracts in reference to her separate business and her separate real estate, in the same manner and to ·the ·same extent as a *feme sole.* I am inclined to believe that this con-·tract does not come within the provisions of any of those acts.

It is not a contract in her separate business, and, within the meaning of those acts, does not relate to her separate real estate. It is to be governed, therefore, by the rules of law in force in this State prior to the enactment of those acts, and a particular examination of those acts will not be necessary in the disposition of this case. Under those acts, a married woman has an absolute legal estate in her lands and other property, and it cannot well be claimed that she has less power to charge such estate in equity with her debts and obligations than she had to charge her equitable estate under the rules of law previously existing. (*Colvin* v. *Currier*, 22 Barb., 372.) In *Yale* v. *Dederer* (18 N. Y., 272), Judge COMSTOCK says: " A married woman may, as incidental to the perfect right of property and power of disposition which she takes under this statute, charge her estate for the purposes and to the extent which the rule in equity has heretofore sanctioned in reference to separate estates;" and in the same case, in 22 N. Y., 451, Judge SELDEN says that it was settled in that case, when first before the court, "that the power conferred upon married women by these statutes to hold to their separate use, and to convey and devise all their real and personal estate, as if unmarried, carried with it the power to charge such estate substantially in the manner and to the extent previously authorized by the rules of equity in respect to separate estates."

By the common law, the contracts of married women are always void and cannot be enforced against them. But in equity, a married woman having a separate estate has, for more than a century in England, been treated, as to such estate, as a *feme sole*, and capable of charging such estate in equity with all her debts and obligations. In order to effect the charge, all that was necessary was that, in contracting the debt or obligation, she should intend to charge her separate estate. This intention might be contained in the contract, or might be implied or inferred from circumstances. It was early held, that whenever a married woman gave a bond, note, or any other written contract for the pay

ment of money, without any mention whatever of her sepa-rate estate, she must be intended to have designed a charge upon that estate; for, otherwise, her act in executing the instrument would be nugatory, and the instrument thus made would have no validity or operation. And the same rule was finally extended to her parol contracts. So that in England it has been settled, for a long time, that the separate estate of a married woman is charged with all her debts and obligations, without any express intention so to charge it. The intention is always implied unless the contrary is proved. (*Hulme* v. *Tenant*, 1 Br. C. C., 16; *Murray* v. *Barlee*, 3 My. & K., 220; 1 White & Tudor's Leading Cases in Equity, 324.) The rule, as thus settled in England, was at an early day substantially adopted in this State. (*Jacques* v. *Methodist Episcopal Church*, 17 John., 548; *North Am. Coal Co.* v. *Dyett*, 7 Paige 9; S. C., 20 Wend., 570; *Knowles* v. *McComby*, 10 Paige, 343; *Vanderheyden* v. *Mallory*, 1 Com., 453.) Finally, in the case of *Yale* v. *Dederer*, a single qualification for the first time in this State, was added to this rule. It was held, that unless the consideration of the contract was one going to the direct benefit of the estate, the intention to charge the separate estate must be stated in and be part of the contract. With this single qualification, the English rule in equity, I believe to be the law of this State.

The position of a *feme covert*, then, in this State; in refer-ence to her contracts is as follows: She is bound, like a *feme sole*, by all her contracts made in her separate business or relating to her separate estate, within the meaning of the acts of 1848, 1849, 1860 and 1862; and such contracts can be enforced in law or equity, as the case may be, just as if she were a *feme sole*. All her other contracts are void at law, and do not bind her personally, but may be enforced in equity against her separate estate, provided the intention to charge that estate be stated in the contract.

It would seem, from this summary view of the law, touch-ing the question under consideration, that the contracts of indorsement, now before us, were plainly such as to bind

the separate estate of the defendant. To this conclusion, however, two objections are made, which must be considered.

It is said that, as the defendant is a mere surety, and her contract is void at law, it will not be enforced against her in equity. It is undoubtedly the general rule that contracts of sureties which are void or discharged at law will not be enforced in equity. (*Ludlow* v. *Simond*, 2 Caines Case, 1.) But that rule is applied only in cases where a surety has undertaken to bind himself at law merely, and his contract was either void originally or became inoperative by something subsequently occurring. In such a case, where there was no consideration moving to the surety, equity will not enforce his contract against his property. The contract being void at law and not binding the person of the surety, there is no ground upon which equity can execute it against his estate. This rule, however, cannot be applicable to the case of a married woman who, as surety, undertakes expressly not to bind herself at law, but to bind and charge her separate estate in equity, the other party to the contract not relying upon it as valid at law or binding her person, but simply as binding her estate in equity. The only case which I have been able to find, holding that a married woman cannot, as surety, charge her separate estate in equity by a contract void at law is *Kelso* v. *Tabor* (52 Barb., 125). That case is unsatisfactory in its reasoning and is in conflict with numerous authorities upon the same point. (*Hulme* v. *Tenant*, *supra* ; *Heatley* v. *Thomas*, 15 Ves., 596 ; *Stanford* v. *Marshall*, 2 Atk., 68 ; *Pybus* v. *Smith*, 3 Bro. Ch., 340 ; *Vanderheyder* v. *Mallory*, 1 Com., 462 ; *Jarman* v. *Wilkerson*, 7 B. Monroe, 293 ; 2 Story's Eq., §§ 1400, 1401 ; Reeves' Dom. Rel., 168 ; Willard's Eq., 649, 651 ; Cord., §. 255.) Story says : " If she gives a promissory note or an acceptance, or a bond to pay her own debt, or if she joins in a bond with her husband to pay his debts, the decisions have gone the length of charging it as her separate estate." Reeves says, that it is now well settled, " that if she joins in a bond with her husband, her separate property is liable to pay such

bond"; and WILLARD says: "A wife may, as respects her separate estate, become surety for her husband."

It is quite clear that the Court of Appeals, in the case of *Yale* v. *Dederer*, were of the opinion that a married woman could charge her separate estate as surety for her husband, provided the intention to do so was expressed in the contract; otherwise, that case could have been disposed of adversely to the plaintiff with but little discussion. Judge SELDEN in his opinion (22 N. Y., 458), says: "As was shown by Judge COMSTOCK when this case was here before, mere equity, *not resting upon any positive contract*, will never seize upon the separate estate of the wife and appropriate it to the payment of a debt of the husband for which she is a mere surety; and it follows from what has been previously said, that the estate of the defendant cannot be held liable upon this note, upon the ground that she intended to make it a charge; because to make such an intent of any importance, it must be either expressed or implied in the terms of the contract."

It is also objected that the contracts in question are not sufficient in form to charge the separate estate of the defendant; that is that a *feme covert* cannot charge her separate estate by simply expressing her intention to do so in the contract, but that she must create the charge by mortgage or pledge, or some other contract, executed according to the forms of law particularly describing the property to be charged; and so the Supreme Court seems to have held in this case. There is no authority to sustain such an objection. All that was ever required in England, and, so far as I have observed in this State, was that there should be an intention to charge the separate estate; such intention in this State to be contained in the contract. So far from requiring the charge to be in any particular form, describing particularly any property in England, it is not required that the contract shall in any way mention or refer to the property; and under the case of *Yale* v. *Dederer*, where the contract is for the benefit of her separate estate, it is not necessary to refer to or mention the separate estate in the contract; and it

must be held as having been decided in that case, that all that is necessary to create the charge in other cases, is that the intention to charge shall be contained in the contract. It has never been held that the charge should be in such form as to create a specific lien on the property; for if that were so, the liens would have to be satisfied in the order of their creation. An intention to charge is regarded as in the nature of an appointment, and courts of equity in the exercise of their peculiar jurisdiction over married women and their separate property, give effect to that intention by seizing the separate property to satisfy the charges, not in the order of their creation, but *pari passu* or in the order of their prosecution by the vigilance of creditors.

I, therefore, reach the conclusion that the defendant, by her contract of indorsement, charged her separate estate in equity; and in reaching this conclusion, we violate no public policy. The law now regards a married woman as perfectly capable to manage and take care of her own property, to will, sell, give away, mortgage or pledge the same. And still further, it regards her as capable as her husband, to carry on any business, large or small, on her own account, and to bind herself by all her contracts in that business. While this is so, it is idle to say that the policy of the law requires courts to hold any of her contracts void simply because she is a married woman. The old religious idea of a mystic union in marriage, by which "they twain become one flesh," and the common law notion, that by marriage, the very being and legal existence of the woman was suspended or incorporated, and consolidated with that of her husband, have, to a large extent, become old fashioned and obsolete. The wife is now regarded by the law as competent to vindicate her own wrongs, and the recent legislation in this State, would seem to indicate that as to her separate property and business, she needed no greater or other protection than does her husband. Yet, until further legislation, courts are bound by precedents and authority, to

hold that her power to make valid contracts is still somewhat limited.

The equitable charge thus created by the defendant, could be enforced only in equity. This action, however, seems to have been commenced and tried, and was decided as an action of law. A personal judgment was rendered against the defendant, with the other parties to the note for money, and in this there was manifest error. She is the only party who appealed from that judgment, and the only question for us to consider is, whether the judgment was authorized as against her; and if not, what we shall do with it.

The complaint states, not as particularly as would be well, yet sufficiently, all the facts necessary to charge her estate in equity. After alleging the making, and indorsement of the notes, etc., it alleges (and this is not denied), that she is the wife of Edward Babcock, and that, at the time of making her said indorsements on said notes, she had, and still has a separate estate, and intended to charge said estate by her said indorsements." If the complaint had prayed against her, the proper equitable relief, instead of legal relief, it could not well be denied that it would have been sufficient as to her. But the prayer for relief furnishes no obstacle. The Code (§ 275) provides, that where an answer has been interposed to the complaint, the court may grant "any relief consistent with the case made by the complaint, and embraced within the issue." Hence the complaint was sufficient to authorize the proper equitable relief, and was fully sustained by the admissions, and the proof. The plaintiff proved the indorsement of the notes in the manner set out in the complaint, and the other facts necessary to charge the defendant as indorser; and also proved that, at the time she indorsed the notes, she owned and still owns, as her separate estate, a house and lot situated in the city of Troy, worth several thousand dollars. I do not see what other fact it was necessary for the plaintiff to prove, to entitle it to equitable relief. The facts alleged were sufficient, and the facts admitted and proved were sufficient, and the only error

the referee committed was in ordering a legal instead of an equitable judgment against the defendant. For this error, among others, the Supreme Court absolutely reversed the judgment and granted a new trial. I do not think this result should follow. It was the design of the Code to abolish the distinction between legal and equitable remedies. They are now administered in the same courts.; and it is sacrificing substance to form, more than the policy of the law now tolerates, to turn a party out of the very court that is to administer equitable relief, because he has not prayed for such relief in his complaint, while the facts alleged and proved show him entitled to it. (*Emory* v. *Pease*, 20 N. Y., 62; *Barlow* v. *Scott*, 24 N. Y., 45.) In *Emory* v. *Pease*, the plaintiff commenced a legal action to recover a balance of account stated. On the trial the complaint was dismissed, the court holding that the action should have been one in equity for an accounting. The judgment entered upon this decision was affirmed at General Term, and the plaintiff appealed to the Court of Appeals, which reversed the judgment. Judge COMSTOCK, writing the opinion of the court, while he held that the complaint was insufficient for an action at law, as it did not sufficiently show an account stated, and that the Supreme Court was right in holding that the action could not be maintained as an action at law, held that the court should have sustained the action, or one in equity for an accounting. He said: "But if an account of net profits has not been taken according to the rule furnished by the agreement, it seems to us, upon the facts stated, that the plaintiff is entitled to such an account, and then to recover whatever sum, if anything, shall appear to be due to him. This is probably not the view in which the suit was brought, nor is it in accordance with the prayer of the complaint. But relief is to be given consistent with the facts stated, although it be not the relief specifically demanded (Code, § 275); and in determining whether an action will lie, the courts are to have no regard to the old distinction between legal and equitable remedies. These distinctions are expressly abolished. A

suit does not, as formerly, fail because the plaintiff has made a mistake as to the form of the remedy. If the case which he states entitle him to any remedy, either legal or equitable, his complaint is not to be dismissed because he has prayed for a judgment to which he is not entitled."

No difficulty is caused by the presence, as parties to the action, of the other parties to the note, who do not appeal. No objection to their joinder as parties was made by demurrer or answer. While they are not necessary parties in an equitable action against Mrs. Babcock, they are proper parties so as to have a final adjustment of the matters set up in the answer in diminution of plaintiff's claim.

The only remaining question to be considered is the form of judgment which the referee should have ordered against the defendant, Mrs. Babcock. When the estate sought to be reached, is a strictly equitable one, a receiver must be appointed to take so much of the estate as may be necessary to satisfy the charge. A judgment in such a case, authorizing an execution, would not be appropriate; but when the estate charged is a legal estate, as all estates of married women are under the statutes above referred to, the judgment may provide for enforcing payment of the charge by execution against such estate. The Code, section 274, as amended in 1862, provides that "in an action brought by or against a married woman, judgment may be given against her as well for costs as for damages, or both for such costs and for such damages, in the same manner as against other persons, to be levied and collected of her separate estate, and not otherwise." And section 287 provides that "an execution may issue against a married woman, and it shall direct the levy and collection of the amount of the judgment against her from her separate property, and not otherwise." These provisions of the Code are not confined, as has been sometimes claimed, to legal actions only, and there is no reason for so confining them. They purport to relate to all actions against married women, and are quite appropriate since married women held their separate property by a strictly legal

title like other persons. There is no reason why resort should always be had to the cumbersome process of a receivership to enforce a charge against their legal estate; and since that amendment to the Code, courts of equity have the option to enforce the charge by means of an execution, or by means of a receivership, as will best promote in any case the ends of justice.

I, therefore, conclude that the proper judgment to be entered by the referee was one adjudging the amount reported due, a charge upon Mrs. Babcock's separate estate, to be levied and collected by execution out of the same, and not otherwise; and as there is no dispute about the facts, this court should order the proper final judgment.

The order of the General Term should, therefore, be reversed, and the judgment entered upon the repeal of the referee, modified as here indicated, and, as thus modified, affirmed without costs to either party upon the appeal in either court.

Lorr, Ch. Com., and LEONARD, Com., concurred with HUNT, Com., for reversal of the General Term and affirmance of the judgment entered upon the report of the referee.

And it was so adjudged.