### Perkins *vs.* Elliott and wife.

1. A married woman has no power to charge her separate estate by any writing, even though it contain words which show a clear intention to bind such estate, except a mortgage acknowledged as required by law, or, for debts contracted for the benefit of her separate estate, or for her own benefit on the credit of it.

2. The words, "the said obligation to be charged upon the separate estate of the said Louisa Elliott," in a note, signed by a married woman as surety for her husband, do not create a lien upon her separate estate.

This cause was argued on bill and demurrer.

*Mr. Vanatta,* in support of the demurrer.

*Mr. Pitney,* contra.

THE CHANCELLOR.

The defendant, Louisa Elliott, held property to her separate use, under the act for better securing the property of married women. In January, 1870, she signed a note, with her husband, and as his surety, for $4000. The debt was not for her benefit, or that of her separate estate; but the note contained these words: "the said obligation to be charged upon the separate estate of said Louisa Elliott." The object of

this suit is to have this debt declared a lien upon her separate estate.

For the reasons in former opinions in the cases of *Peake* v. *Labaw*, 6 *C. E. Green* 269; *Armstrong* v. *Ross*, 5 *Ibid.* 109; and *Harrison* v. *Stewart*, 3 *Ibid.* 451; I am of opinion that this debt cannot be declared a lien. This case differs from Peake *v.* Labaw, in this—that the note in that case did not contain the words making it a charge upon the real estate. But it is within the principles of that decision as to the power of a married woman to charge her estate by any writing, except a mortgage acknowledged as required by law, or for debts contracted for the benefit of her separate estate, or for her own benefit on the credit of it. These last cases are established by a series of decisions, and have an equitable foundation in the necessity for the protection of her separate property, and to provide for her own necessities out of property settled to her use. The manner and extent of equitable relief was founded on cases in which married women had separate property, vested in trustees for their separate use, with power of appointment. But the right to the relief was not founded on these cases; for in them, it was dependent on the power of disposing by appointment; the courts determining what contracts should be held to amount to appointment.

In this state, no power has been given by statute for married women to dispose of their separate property. The decisions of this court, referred to fully in Ross *v.* Armstrong, held the power to exist, in the cases and for the purposes above specified. This was rendered necessary, for the reasons above stated; but in no case has it been held to extend further; and these purposes have been carefully laid down, in almost every case in this state, as the limits of the power. It is true that no adjudication determines that it shall not extend beyond them. But the reasons for the doctrine, so far as established, do not extend to being surety for a husband or a stranger. The difficulty in the way, is the want of power in the wife to bind her property, even when she clearly intends to bind it.

The married woman's act, in New York, as amended in 1849, gave express power "to convey and devise her separate property, and any interest and estate therein, and the rents, issues, and profits thereof, in the same manner and with like effect as if she were unmarried." In this respect it differs from the New Jersey statute, which contains no such power.

Hence, Justice Selden, in the beginning of his opinion in *Yale* v. *Dederer*, 22 *N. Y.* 450, says : " That the power conferred by those statutes, to convey and devise all their real and personal estate, as if unmarried, carried with it the power to charge such estate, substantially, in the manner and to the extent previously authorized by the rules of equity in respect to separate estates." Upon this basis the discussion is had in that case, whether the mere signing a note, as surety for her husband, with proof by parol that credit was given to her separate estate, would amount to a charge. The whole court held that it would not ; and a majority held, that the intention to charge the separate estate must be stated in the contract itself. The point of the decision is, that the separate estate of a married woman shall not be charged for her undertakings as surety by mere implication.

The later decision of the same court, in *The Corn Exchange Ins. Co.* v. *Babcock*, 42 *N. Y.* 613, relied upon by counsel in the argument, does not affect the views taken in Yale *v.* Dederer, or in Armstrong *v.* Ross, and Peake *v.* Labaw. In Mrs. Babcock's case, she had added to her special endorsement express words, charging the payment of the note on her separate property. This satisfied the objection that arose in Yale *v.* Dederer. The only question raised was as to the power. The charges had been made in writing in the contract, and was good, if she had the power to make it. Since Yale *v.* Dederer, the statute of 1860 had enacted, " that any married woman, possessed of real estate as her separate property, may bargain, sell, and convey such property, and *enter into any contract* in reference to the

same." On this provision, and that in the previous act of 1848 and 1849, the court expressly place the power to charge the property; and further hold, that this written general charge on all her separate property was sufficient, without describing or specifying the property. I concur in this conclusion, fully. The defendant had by law power to dispose of her property, or to make any contract relating to it. For a good consideration, by writing, for that very purpose, she charged the debt upon her separate property.

In this case, if there had been a statute in New Jersey similiar to those in New York above referred to, I should feel bound to declare this debt a lien upon the separate estate of Mrs. Elliott; but the legislature of this state have not adopted these provisions, or passed any act of like import. It is notorious that acts proposing like amendments to the married women's act, have been repeatedly rejected by the legislature. I am not disposed, by judicial legislation, to make any changes in the law which the appropriate department has refused to make; much less this change, which will take from married women one of the few protections left to them from the importunities of their husbands, or more often, of their husbands' creditors. This especially should not be done, on pretence of carrying out the provisions of an act for better securing the rights of married women.

The bill must be dismissed.