NEW YORK COUNTY.—HON. R. S. RANSOM, SURRO-
GATE.—January, 1888.

MATTER OF GROVE.

*In the matter of the estate of* MARGARETTA GROVE,
*deceased.*

The husband of an administratrix of the estate of an intestate is a compe-
tent surety upon her official bond.
Matter of McMaster, 12 *Civ. Pro. R.*, 177—disapproved.

JUSTIFICATION of surety on official bond of admin-
istratrix of decedent's estate.   The facts are stated in
the opinion.

THE SURROGATE.—The administratrix, after taking
the oath of office and signing the required bond in the
penalty of $6,000, produced, as one of her proposed
sureties, her. husband.   The administration clerk re-
fused to accept him as a surety, the custom having
been latterly to conform the practice, in this particu-
lar, to the decision by LAWRENCE, J., in the Matter of
McMaster (12 *Civ. Pro. R.*, 177).   Up to the present
time this decision has never been questioned; no
objection has ever been made to the rejection of a
husband or wife as the surety on the bond of each
other.

The facts in the McMaster case, were as follows :
Mary G. Muir, as executrix of David McMaster, gave
three undertakings, upon each of which her husband,

David Muir, was a surety. The respondent, Johanna Bernhard, excepted to his sufficiency as a surety, on the ground that he had not the legal capacity to be the surety of his wife.

Judge LAWRENCE, in his opinion says: "The cases cited by Mr. Foster, respondent's attorney, seem to sustain the exceptions taken by him to the sufficiency of Mr. Muir as surety for his wife." The above is all there is of the opinion: no cases are cited, and the justice relies entirely on the cases cited by respondent's attorney for reaching the above decision.

The first case presented by counsel in that case was Bertles v. Nunan (92 *N. Y.*, 152), which bears simply and solely on the point of what estate husband and wife are seized of, where there is a joint conveyance of land to them, and decides that they do not take as tenants in common, or joint tenants, but as tenants by the entirety, and for this purpose the common law doctrine of the unity of husband and wife has not been abrogated by statute, and recognizes the fact that, under the statutes of 1860 and 1862, the wife is enabled to control and convey whatever estate she gets by any conveyance made to her solely. The next case cited was Zorntlein v. Bram (100 *N. Y.*, 12). This case was decided precisely on the same point as the one in 92 *N. Y.*, and the same remarks and criticisms will apply.

The next case which was considered by Judge LAWRENCE was Fairlee v. Bloomingdale (14 *Abb. N. C.*, 341). This was on the point of the validity of a partnership existing between husband and wife, and the court held that, prior to 1884, such a partnership could not exist, because in a partnership there can be

no "separate property" and "business," and the "labor" performed by one partner in connection therewith, cannot possibly be on the "sole and separate" account of the party performing it. This case is negative rather than affirmative authority that, where the wife has a separate estate, she is absolute mistress of it, as though she were a feme sole, but that, because the very nature of a partnership requires a joint ownership of the partnership property, she is thus placed in the position of any partner in respect to the joint ownership of the partnership property; and then the common law rule applies that, because of the unity of husband and wife, there can be no partnership between them. The other cases cited are on this last point.

It will be seen that Judge LAWRENCE has evidently not examined the Laws of 1884, chap. 381. All the cases cited above were considered before that act, as indeed were the cases that will be considered later on; but that act weakens and lessens whatever effect the above mentioned cases may have on the point, while it strengthens those cited in support of my theory.

There is no doubt but what, at common law, the contracts of a married woman are void, and cannot be enforced against them; but in equity, a married woman having a separate estate, has been treated as to such estate, as a feme sole, and capable of charging such estate in equity with all her debts and obligations. This is so universally conceded and settled that authorities are unnecessary. Now that we have her right to make a contract charging her separate estate, we will go a step further. Can

she make a contract whereby she agrees to become surety for her husband on his promissory note or other obligations if she expressly charges her separate estate? The entire weight of the authorities support this proposition.

The most notorious case on this point seems to be that of Yale v. Dederer (18 *N. Y.*, 265). In that case, Dederer had bought 38 cows of plaintiff, and refused to complete the sale unless his wife would write him a note for the price. An action was brought against Dederer, judgment recovered and execution issued and returned unsatisfied, and an action then brought against the wife. She was proved to have a separate property amply sufficient for the payment of the note. Judgment against her was awarded at Special Term, affirmed at General Term and reversed by Court of Appeals. In the opinion, COMSTOCK, J., says : "My conclusion, therefore, is that, although the legal disability to contract remains as at common law, a married woman may, as incidental to the perfect right of property and power of disposition which she takes under this statute, charge her estate for the purposes and to the extent which the rule in equity has heretofore sanctioned in reference to separate estates." The judgment was reversed upon the ground that the mere signing of a note by a married woman—not, in fact, for the benefit of her separate estate, but as surety for another, and not declared in the note to be for her benefit, and where she had not professed in her contract to charge such estate—did not operate as a charge upon the estate.

A much stronger case is that of the Corn Ex. Ins.

Co. v. Babcock (42 *N. Y.*, 613), where it was held that, where a married woman, having separate real estate, indorses her husband's promissory note as his surety without consideration and without benefit to her separate estate, but which indorsement expresses that, for value received, she thereby "charged her individual property with the payment of this note, an action on such indorsement, in which is alleged the coverture of the defendant, the ownership by her of separate estate, her intent to charge such estate with the note, and her indorsement in the form stated, is maintainable." This case was followed in 50 *N. Y.*, 660.

In the Third Nat. Bk. v. Blake (73 *N. Y.*, 260), the defendant, Elizabeth M. Blake, indorsed the promissory note of her husband to the plaintiff, thus : " I hereby charge my separate and personal estate for the payment of the within note : *held*, that this was a valid agreement on her part, based on a sufficient consideration, and was binding ; that the indorsement being in form a charge upon her separate estate, she could deal with the obligation as if she was a feme sole."

These cases would seem to settle beyond any doubt that a married woman, having a separate estate, can become the surety of her husband on a promissory note. I have been unable to discover any decisions where the husband or wife have gone on each other's bond ; but the two cases become so similar—the same principles of law governing both—I think the cases above referred to must govern in the latter as in the former case.

It is true that the question under discussion is whether the husband can go on the wife's bond; but having established that, under similar circumstances, the wife could become surety for her husband, I have no hesitation in saying that the husband could for the wife, and, indeed, I think that would be the stronger case of the two.

All the cases discussed above were decided prior to 1884. In that year chap. 381, Laws 1884, was passed by the legislature, and reads as follows:

"Section 1. A married woman may contract to the same extent, with like effect and in the same form, as if unmarried, and she and her separate estate shall be liable thereon, whether such contract relates to her separate business or estate, or otherwise, and in no case shall a charge upon her separate estate be necessary.

"Section 2. This act shall not affect nor apply to any contract that shall be made between husband and wife."

This enactment removes even the requirement that in a contract she may make either with third persons for her own benefit or the benefit of her husband, she need not expressly charge her separate estate, and as the counsel for the administratrix has argued in his brief, the contract is not with him, but about him, and made with a third party as obligee.

A husband and wife may form a partnership and give notes in the firm name where the debt was created for property furnished for the benefit of her separate estate (Graff v. Kinney, 37 *Hun*, 405).

Suppose we admit, for the sake of argument, that if

a wife go on her husband's bond, or vice versa, that it is a contract between them and not one with a third person; even in that case it has been held that she may contract with her husband in relation to her separate estate (Bodine v. Killeen, 53 *N. Y.*, 93; Knapp v. Smith, 27 *N. Y.*, 277).

But there can be no question as to who would be the contracting parties in the case of a bond. A perusal of the bond will show that the obligor or obligors are held and firmly bound unto "the People of the State of New York." It is very plain that the contract is between the surety and the People.

I think there can be no question but what the husband or wife can go on each other's bond; in the case of the wife, if she has a separate estate; and the decision of Judge LAWRENCE should be disregarded.